IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL RESTO-OTERO,

                              Plaintiff,              Civil Action No.
                                                      9:17-CV-1115 (GLS/DEP)

          v.

IMAM MOHAMMAD,

                              Defendant.

_____

APPEARANCES:                                OF COUNSEL:

FOR PLAINTIFF:

MICHAEL RESTO-OTERO, *Pro Se*
10-B-1849
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

FOR DEFENDANTS:

HON. BARBARA D. UNDERWOOD          DAVID A. ROSENBERG, ESQ.
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Michael Resto-Otero, a New York State prison inmate, has commenced this civil rights action, pursuant to 42 U.S.C. § 1983, against defendant Imam Mohammad, an individual purportedly responsible for ensuring the distribution of religiously-appropriate meals at the prison facility in which plaintiff was confined at the relevant times. Plaintiff alleges that his First Amendment right to freely exercise his chosen religion was violated by defendant's failure to arrange for him to receive appropriate meals during Ramadan.

Currently pending before the court is a motion brought by defendant in which he seeks dismissal of plaintiff's complaint, based both on lack of personal involvement and plaintiff's apparent failure to fully exhaust his available administrative remedies before filing suit. For the reasons set forth below, I recommend that defendant's motion be denied.

I.    BACKGROUND[1]

Plaintiff is currently an inmate being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt. No. 1; *see also* Dkt. No. 1-1 at 1. Although he is now incarcerated at another DOCCS prison facility, at the times relevant to his claim he was confined to the Clinton Correctional Facility ("Clinton C.F."), located in Dannemora, New York. Dkt. No. 1 at 4. Plaintiff is a Muslim, having converted from the Protestant faith in 2015, and as such observes the holy month of Ramadan.[2]  *See generally id.*

Plaintiff was transferred into the Clinton C.F. on June 1, 2017, Dkt. No. 1 at 4. Upon arriving there, he inquired of an unidentified corrections officer concerning the status of his Ramadan meals. *Id.* In response, the

---

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964). Portions of the background have also been derived from the exhibits attached to plaintiff's complaint, which may also properly be considered in connection with a dismissal motion. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."); *accord*, *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

[2]    During Ramadan, "observant Muslims fast from sun up to sun down." *See Ford v. McGinnis*, 352 F.3d 582, 585 (2d Cir. 2003) (discussing the general aspects of Ramadan and some of the accommodations made by DOCCS for Muslim inmates).

officer stated that he had no knowledge regarding the meals. *Id.*

According to plaintiff, he then wrote to defendant Mohammad, an Imam, inquiring whether Ramadan meals could be delivered to his cell. Dkt. No. 1 at 4. In response to that inquiry, defendant indicated that only inmates assigned to keeplock status[3] are entitled to receive "feedup"— that is, eligible to have meals delivered directly to their cells. *Id.* at 4-5.

Approximately one week later, plaintiff was moved into keeplock status. Dkt. No. 1 at 5. When plaintiff inquired of another unidentified corrections officer about that status of his Ramadan meals, "nobody did nothing" and he did not receive his religious meals. *Id.* In total, plaintiff missed twenty-five religious meals during Ramadan. *See generally* Dkt. Nos 1, 1-1.

Plaintiff alleges that on June 5, June 12, and June 17, 2017, he authored grievances regarding the failure of prison officials to honor his request for Ramadan meals, but received no response to those complaints. Dkt. No. 1 at 5; *see also* Dkt. No. 1-1 at 2-4. In addition, plaintiff alleges that he wrote to the facility's Inmate Grievance Resolution

---

[3]      " 'Keeplock' is a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. Lefevre*, 891 F.2d 38, 39 (2d Cir. 1989); *see also* 7 N.Y.C.R.R. § 301.6

Committee ("IGRC") and to the facility's superintendent regarding the issue and, as of the date of his complaint, was "still w[aiting] for [a] respon[se]." Dkt. No. 1; *see also* Dkt. No. 1-1 at 5. Although this allegation is absent from plaintiff's complaint, in opposition to defendant's motion plaintiff alleges that he could not have exhausted his administrative remedies because corrections officers obstructed his ability to mail his grievances.[4] Dkt. No. 24.

As a result of defendant's actions, plaintiff was left mentally and emotionally devastated. Dkt. No. 1 at 5. As relief, plaintiff seeks an award of damages in the amount of $150,000. *Id.* at 6.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on October 6, 2017, by the filing of a complaint accompanied by an application for leave to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. Upon initial review, by decision and order dated December 21, 2017, Senior District Court Judge Gary L. Sharpe granted plaintiff IFP status and limited his claims to a free exercise cause of action under the First Amendment against defendant, dismissing

---

[4]    Plaintiff's opposition papers are properly considered in connection with defendant's motion to dismiss only to the extent that they are consistent with the allegations in his complaint. *See, e.g. Planck v. Schenectady Cnty.*, No. 12-CV-0336, 2012 WL 1977972, at *5 (N.D.N.Y. June 1, 2012) (Suddaby, J.) (citing cases).

various other claims set forth in plaintiff's complaint.[5] Dkt. No.12.

On March 29, 2018, in lieu of answering, defendant filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that plaintiff failed to plausibly allege Imam Mohammad's personal involvement in the constitutional violation asserted. Dkt. Nos. 21, 25. As an alternative basis for dismissal, defendant argues that plaintiff failed to exhaust his administrative remedies prior to bringing suit. *Id.* Plaintiff has opposed the motion. Dkt. No. 24. Defendant's motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Legal Standard Governing Motions to Dismiss

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard that, though unexacting,

---

[5]   Plaintiff's complaint in this action originally named "Imam Elma" as defendant. Dkt. No. 1. Defendant's name has since been corrected on the docket to "Imam Mohammad." Dkt. No. 15. The court notes that the term "imam" refers to "a Muslim spiritual leader, analogous to a priest or rabbi." *Cancel v. Mazzuca*, 205 F. Supp. 2d 128, 133 (S.D.N.Y. 2002).

"demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 555). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

B.    Personal Involvement

Plaintiff's surviving claim is against defendant Imam Mohammad, whose position with the DOCCS is not made entirely clear from either plaintiff's complaint or the parties' motion papers. In his motion, defendant argues that plaintiff has failed to allege facts plausibly suggesting his personal involvement in the conduct giving rise to his First Amendment claim. Dkt. Nos. 21, 25. In opposition, plaintiff contends that to the best of his knowledge, defendant was "a general supervisor of [plaintiff's] religious [beliefs]" and because defendant was not "supervising the right way," it caused him to miss his religious meals during Ramadan while he was housed at the Clinton C.F. Dkt. No. 24.

1.    Personal Involvement Generally

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his own actions under section 1983. *See Ashcroft* 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally

9

protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).[6]

In opposition to defendant's motion, plaintiff intimates that defendant should be held accountable because of his role as "a general supervisor" in connection with plaintiff's chosen religion. Dkt. No. 24. It is well-established that a defendant cannot be liable under section 1983 solely by virtue of being a supervisor, " 'and [liability] cannot rest on respondeat superior.' " *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003)); *Wright*, 21 F.3d at 501. To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the

---

[6] Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.[7]

### 2. Analysis

In this case, plaintiff alleges that during Ramadan, a holy month in the Islam religion when observant Muslims fast between sunrise and sunset, he was not provided with twenty-five, religiously-appropriate meals. Dkt. No. 1; *see generally Ford*, 352 F.3d at 585. According to plaintiff, defendant was "indifferent" and failed to "do [his] job[,]" which

---

[7]    Subsequent to issuance of the Second Circuit's decision in *Colon*, the Supreme Court addressed the question of supervisory liability in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Although the issue has been discussed, the Second Circuit has declined to squarely address the impact of *Iqbal* upon the categories of supervisory liability addressed in *Colon. See, e.g., Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) ("We express no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citation omitted)); *see also Reynolds v. Barrett*, 685 F.3d 193, 206 n.14 (2d Cir. 2012) ("*Iqbal* has, of course, engendered conflict within our Circuit without the continuing vitality of the supervisory liability test set forth in [*Colon*,] . . . but the fate of *Colon* is not properly before us[.]").

consisted of "call[ing] and communicat[ing] to check how many are in the list and the[ir] location so they can provide [the inmates] with [our] religious meals[.]" Dkt. No. 1 at 6 (all errors in original); *see also* Dkt. No. 24 at 2. In addition, defendant "failed to [direct] his time to [reassure] that [plaintiff] was fest [sic] and have [his] [religious] meals." Dkt. No. 1 at 6. As a result, plaintiff was deprived of his ability to learn about and practice his religion. *See generally* Dkt. Nos. 1, 1-1.

After plaintiff inquired about his meals with an unidentified corrections officer, plaintiff wrote to defendant to see if defendant could "send [him] the [Ramadan] meal" and "explain the situation[.]" Dkt. No. 1 at 4. Defendant responded that only inmates that are housed in keeplock were eligible to have Ramadan meals delivered directly to their cells. *Id.* at 4-5; *but see* Dkt No. 1-1 at 2 (noting that plaintiff was keeplock). Although plaintiff was apparently moved to keeplock the following week—and would have been eligible for "feedup" pursuant to defendant's prior correspondence—he was still not provided with the appropriate meals. Dkt. No. 1 at 5.

When I construe plaintiff's complaint liberally, as I must, I conclude, that his allegations support a plausible inference that defendant was personally involved in the failure to provide plaintiff with religiously-

appropriate meals. *See generally* Dkt No. 1. Plaintiff does not merely

allege that defendant rejected his complaint regarding the meals; rather,

he alleges that defendant had direct oversight of the distribution of

religious meals at the Clinton C.F. *See, e.g., McKenna v. Wright*, 386 F.3d

432, 437-38 (2d Cir. 2004) ("Although it is questionable whether an

adjudicator's rejection of an administrative grievance would make him

liable for the conduct complained of, . . . [the defendant] was properly

retained in the lawsuit at this stage, not simply because he rejected the

grievance, but because he is alleged [to oversee the prison program].")

In his initial decision and order, dated December 21, 2017, Senior

District Judge Sharpe considered, *inter alia*, whether pursuant to 28

U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), plaintiff failed to state a claim

upon which relief may be granted. *See generally id.* Although Judge

Sharpe dismissed many of plaintiff's claims, he concluded the following

with respect to defendant's personal involvement:

> Here, plaintiff has alleged that he wrote to
> Imam [Mohammad] after arriving at Clinton C.F. to
> ask if [Mohammad] could "send [plaintiff] the meal"
> and was told by [Mohammad] 'that keep block [sic]
> are the only ones that get feed up.' [Dkt No. 1 at 4-
> 5]. Plaintiff further alleges that he was transferred to
> keeplock one week after receiving a response from
> [Mohammad], and thereafter continued to not
> receive his religious meals. *Id.* at 5. In addition,
> plaintiff alleges that it was [Mohammad's] job to 're-

> asure [sic] that [plaintiff] was fest [sic] and have [his]
> religins [sic] meals.' *Id.* at 6. Liberally construed,
> these alleged facts plausibly suggest that
> [Mohammad] was personally involved in depriving
> plaintiff access to religious meals.

Dkt. No. 12 (footnote omitted). Accordingly, Senior District Judge Sharpe

previously declined to dismiss plaintiff's free exercise claim under the First

Amendment for the failure to state a claim upon which relief may be

granted. *See generally id.* As several courts have recognized, a court

effectively evaluates whether a complaint "fails to state a claim upon which

relief may be granted" on initial review under the same standard that

governs in the case of a motion to dismiss brought pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure. *See e.g.*, *Manon v. Hall*,

No. 3:14-CV-1510, 2015 WL 8081945, at *3 (D. Ct. Dec. 7, 2015); *Preston

v. New York*, 223 F. Supp. 2d 452, 462 (S.D.N.Y. 2002); *Olmos v. Ryan*,

No. 10-CV-2564, 2013 WL 394879, at *4 (D. Ariz. Jan. 31, 2013) ("The

First Amended Complaint has already been screened pursuant to 28

U.S.C. § 1915, which uses the same standard as Federal Rule of Civil

procedure 12(b)(6). . . . Defendants do not cite sufficient grounds to

reconsider." (internal citation omitted)). I perceive no basis at this early

juncture to recommend disturbing the court's prior decision regarding this

issue. The question of whether defendant was personally involved in the

constitutional violation alleged by plaintiff is better suited for resolution on a motion for summary judgment, or at trial, based upon a fully developed record. Accordingly, I recommend that defendant's motion to dismiss on this ground be denied.

### C.    Exhaustion of Remedies

As an alternative basis for dismissal of plaintiff's complaint, defendant argues that plaintiff's free exercise claim is barred by virtue of his failure to exhaust available administrative remedies. Dkt. No. 21-1 at 8-12. In opposition to defendant's motion, plaintiff contends that administrative remedies were unavailable to him. Dkt. No. 24 at 1.

### 1.    Exhaustion Generally

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate

lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).[8]

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints regarding the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that

---

[8]     While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion " 'in a substantive sense,' " an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted)).

inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[9] have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[10]  7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the DOCCS

---

[9]     The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

[10]     Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

Where an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent, bypassing the IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has twenty-five days from the date of its receipt to render a decision. 7 N.Y.C.R.R. § 701.8(g). An inmate may appeal the superintendent's decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. § 701.8(h).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires

proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[11]  *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what

---

[11]    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Because failure to exhaust is an affirmative defense to a prisoner's civil rights claim, an inmate plaintiff is under no obligation to plead facts demonstrating that he has complied with the PLRA's exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 211-17 (2007). If, however, such an inmate-plaintiff pleads sufficient facts revealing his failure to exhaust available administrative remedies, the complaint may be dismissed for failure to state a cognizable claim. *Id.* at 215-16; *see e.g.*, *Weidman v. Wilcox*, No. 12-CV-6524, 2014 WL 1056416, at *3 (W.D.N.Y. Mar. 17, 2014) (dismissing the plaintiff's complaint because it clearly alleged that the plaintiff failed to avail himself of the prison grievance

procedure).

>    2.    Analysis

In this case, plaintiff has plausibly alleged that the grievance procedure was effectively unavailable to him. Specifically, plaintiff contends that he filed four "different grievance[s] and [he did not] receive a response." Dkt. No. 24 at 1. Plaintiff alleges that he was in keeplock "and arguing with the officers," who were refusing to process his outgoing mail, including the grievances regarding his religious meals. *Id.* at 1. As a result, plaintiff claims that he "could not exhaust his administrative remedies." *Id.*

Notably, the Second Circuit recently observed that the regulations outlining the IGP process "only contemplate appeals of grievances that were actually filed[,]" *Williams*, 829 F. 3d at 124 (citing 7 N.Y.C.R.R. § 701.8(f), (g)), and "give no guidance whatsoever to an inmate whose grievance was never filed." *Williams*, 829 F. 3d at 124; *see also id.* at 126 ("In sum, the regulations plainly do not describe a mechanism for appealing a grievance that was never filed"). As a result, in *Williams* the Second Circuit concluded that "the grievance procedures that were technically available to [the plaintiff] are so opaque and confusing that they were, 'practically speaking, incapable of use.' " *Id.* at 126 (quoting *Ross*, 136 S. Ct. at 1859); *see also Woodward v. Lytle*, No. 9:16-CV-1174, 2018

WL 4643036, at *2 (N.D.N.Y. Sept. 27, 2018).

Given the circumstances of this case and the fact that the case is in its formative stage, I conclude that the issue of exhaustion is also more appropriately resolved based upon a more robust record. Accordingly, I recommend that defendant's motion to dismiss be denied.

IV.    SUMMARY AND RECOMMENDATION

When plaintiff's complaint is construed liberally, it states a cognizable First Amendment free exercise claim and sufficiently implicates defendant's involvement in the violation. Turning to the issue of exhaustion, I find that the court is not currently positioned to determine whether the IGP was available to plaintiff at the relevant times, or whether instead, by their actions corrections officers effectively precluded plaintiff from availing himself of the grievance procedure, in which case the PLRA's exhaustion requirement would be excused. Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion to dismiss (Dkt. No. 21) be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this

report.[12] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      October 3, 2018
            Syracuse, New York

---

[12]      If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

H

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Dale HENDRICKSON, Plaintiff,
v.
UNITED STATES ATTORNEY GENERAL, G.L.
Hershberger, United States Bureau of Prisons, Gary
Morgan, Pamela Ashline, Kenneth Walicki, Hulet
Keith, Otisville Medical Department, Defendants.

No. 91 CIV. 8135.
Jan. 24, 1994.

MEMORANDUM AND ORDER

McKENNA, District Judge.

*1 On December 4, 1991, pro se plaintiff Dale Hendrickson ("Plaintiff" or "Hendrickson"), an inmate then in confinement at the Federal Correctional Institution in Otisville, New York ("Otisville"), filed this action for injunctive relief and damages based upon alleged violations of his rights under the United States Constitution, Amendments I, IV, V, VI, IX, and XIII, and upon violations of various laws and/or regulations governing prison administration.[FN1] The Complaint named as defendants G.L. Hershberger ("Hershberger"), the United States Attorney General ("Attorney General"), Gary Morgan ("Morgan"), Pamela Ashline ("Ashline"), Kenneth Walicki ("Walicki"), Hulett Keith ("Keith"), the Bureau of Prisons ("BOP"), and the Otisville Medical Department ("OTV Medical Department") (collectively "Defendants"). Defendants moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set out below, Defendants' Rule 12(c) motion is granted.

I.

Defendants move to dismiss Plaintiff's Complaint, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. Rule 12(c) provides:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). "[T]he same standards that are employed for dismissing a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) are applicable" to a Rule 12(c) motion to dismiss for failure to state a claim upon which relief can be granted. *See Ad–Hoc Comm. of the Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987); *see also Viacom Int'l. Inc. v. Time, Inc.,* 785 F.Supp. 371, 375 n. 11 (S.D.N.Y.1992); 5A Charles Wright and Arthur R. Miller, *Federal Practice and Procedure* ¶ 1367, at 515–16 (1990). Thus, the Court must read the Complaint generously, drawing all reasonable inferences from the complainant's allegations. *See California Motor Transp. v. Trucking Unlimited,* 404 U.S. 508, 515 (1972). Moreover, "consideration is limited to the factual allegations in [the] amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.,* 987 F.2d 142 (2d Cir.1993); *accord Allen v. Westpoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991), *cert. denied,* 112 S.Ct. 1561 (1992); *Frazier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). Defendants, therefore, are entitled to dismissal for failure to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

state a claim only if the Court finds beyond a doubt that "plaintiff can prove no set of facts" to support the claim that plaintiff is entitled to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

**\*2** Because the 3(g) statement and declarations submitted to this Court by Defendants have not been considered and are hereby excluded from the record, the Court renders its judgment on the pleadings pursuant to Rule 12(c).

II.

Drawing all inferences in favor of the Plaintiff, *Miller v. Polar Molecular Corp.,* 12 F.3d 1170, 1993 WL 527434 (2d Cir.), the facts are as follows.

During Hendrickson's confinement at Otisville, certain video tapes which had been supplied to him by the government were "systematically and maliciously confiscated"; audio tapes and legal materials also were removed from Plaintiff's possession while he was a pre-trial detainee at Otisville. In retaliation for his bringing legal materials into the Otisville compound area, Plaintiff claims, he was placed in administrative detention. Compl. at 1 (presumably ¶ A.)

Hendrickson also claims at various times to have been wrongly isolated from the general prison population based on alleged and allegedly erroneous OTV Medical Department claims that he had tuberculosis. *Id.* ¶ B. During these periods of medical confinement, Hendrickson claims that the "4A unit team" denied him personal visits, his right to send mail, and telephone communications and consultations necessary to his legal representation. *Id.* ¶ C.

Hendrickson claims that as part of his medical confinement he was "subjected to ruthless and inhumane [d]isciplinary action from the D[isciplinary] H [earing] O[fficer]," and was for 15 days placed in administrative detention and for 30 days deprived of commissary, visitation, and phone privileges. *Id.* ¶ D.

Hendrickson further alleges that commissary items that he had in his possession before entering medical confinement were wrongly confiscated from him, and while in such confinement he was assaulted and searched by the "OTV Riot Squad." *Id.* ¶ E. In addition, he claims, commissary receipts, as well as legal documents and other legal materials were confiscated from him. *Id.* ¶ F.

III.

Defendants argue that Plaintiff fails to state a claim for which relief may be granted. Of course, in considering a pro se pleading, the Court takes into consideration the special circumstances of pro se litigants. As the Second Circuit has often noted, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *accord, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983). We apply the same solicitous standard to the instant motion to dismiss.

Plaintiff, however, has failed to present to this Court either a colorable theory of violation of legal duties or facts to support a claim that might be inferred from the pleadings. Even assuming the truth of Plaintiff's allegations, the Court is left without a cognizable claim before it.

**\*3** At the outset, the Court notes that to the extent that the Complaint seeks injunctive relief from conditions of Plaintiff's treatment while at Otisville as a pre-trial detainee, the claim is now moot as Plaintiff has since been transferred to the United States Penitentiary in Lompoc, California following his conviction at trial. Hendrickson's Complaint also fails to the extent that it seeks damages from the United States government or government officials in their official capacity. Because the United States government enjoys sovereign immunity, it can be sued only to the extent it so consents. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *U.S. v. Sherwood,* 312 U.S. 584, 586 (1941)). No such immunity has been waived in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

suits for damages arising from constitutional violations. *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864 (1983). Thus, the only possible redress remaining available to Plaintiff for the harms alleged is a *Bivens* action [FN2] against government officials in their personal capacities for actions taken under the color of governmental authority.

As Defendants point out, however, Plaintiff has nowhere, other than in the caption of the Complaint, mentioned by name any of the individual named Defendants. Defs.' Mem.Supp.Mot.Dismiss or Summ.Jt. at 2. It is true that Plaintiff did in the body of the Complaint name the "4A Unit Team," the "DHO," and the "OTV Riot Squad," but these designations of group actions undifferentiated as to individuals and of official titles unconnected to any individual names do not allege the actionable *individual* behavior necessary to sustain a *Bivens* claim.

In a *Bivens* action, where Defendants are sued in their personal capacities, actionable behavior must be alleged as to individuals. *See, e.g., Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987), *cert. denied,* 489 U.S. 1065 (1989). A complaint that fails to make any specific factual allegations of "direct and personal responsibility on the part of any of the named defendants in regard to the loss of any of [plaintiff's] property" must be dismissed. *Lee v. Carlson,* 645 F.Supp. 1430, 1436 (S.D.N.Y.1986).

More importantly, the light in which a pro se complaint may be considered does not burn so brightly as to blind the court as to the rights of defendants who are entitled to have claims against them alleged with sufficient clarity as to make possible a defense. Even in a pro se complaint, claims must "specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense ..." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Otherwise, blameless parties would be subject to damages claims for free-floating innuendo. To be sufficient before the law, a complaint

must state precisely who did what and how such behavior is actionable under law. Although the Court may make special efforts to understand the underlying claim of a vague, confusing, or poorly crafted pro se complaint that it would not undertake in connection with a claim prepared by legal counsel, it cannot do so to the extent that this would work an injustice to defendants, whose rights also must be protected. A defendant who is alleged to be liable for his actions has a right to have the claims against him spelled out with a basic degree of clarity and particularity. *See supra* at 7. Although some of the harms alleged by Plaintiff might conceivably be of some substance, the Court cannot understand from the documents before it which defendants are alleged to have participated in which allegedly actionable behavior. The Court cannot on such a basis subject a party to potential liability. *See* Defs' Mot. at 9, 10.

*Summary and Order*

**\*4** For the reasons stated, Plaintiff has failed to plead a colorable case. Defendants' motion to dismiss is granted.

> FN1. The Complaint states only that "Bureau of Prison institutional Law" was violated; subsequent documents filed by Plaintiff imply the violation of specific prison policies. *See, e.g.,* Letter from Hendrickson to Judge McKenna of 10/13/93 at 2 (citing BOP Policy Statement 1315.3 purportedly concerning prisoner access to legal materials while in administrative detention).

> FN2. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

S.D.N.Y.,1994.
Hendrickson v. U.S. Atty. Gen.
Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Manon v. Hall, Not Reported in Fed. Supp. (2015)**

2015 WL 8081945

KeyCite Yellow Flag - Negative Treatment

Declined to Extend by Martindale v. Kirkegard, D.Mont., July 15, 2016

2015 WL 8081945
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Kelvin MANON, Plaintiff,
v.
Johnathan HALL, Warden at
Brooklyn, CI, et al., Defendants.

CIVIL ACTION NO.: 3:14-CV-1510 (VLB)
|
Signed December 7, 2015

**Attorneys and Law Firms**

Kelvin Manon, Suffield, CT, pro se.

Steven R. Strom, Office of the Attorney General,
Hartford, CT, for Defendants.

## MEMORANDUM OF DECISION DENYING DEFENDANTS' MOTION TO DISMISS

Vanessa L. Bryant, United States District Judge

 **\*1** Plaintiff Kelvin Manon, pro se and incarcerated
at the MacDougall-Walker Correctional Institution in
Suffield, Connecticut, brings this 42 U.S.C. § 1983
action against Defendants Warden Johnathon Hall,
Warden Brighthaupt, Deputy Warden Corey, and Deputy
Warden Jane/John Doe (collectively, "Defendants").
The complaint raises conditions-of-confinement and
retaliation claims and seeks monetary, injunctive, and
declaratory relief. In its initial review order, this
Court dismissed all claims against Deputy Warden
Corey for lack of personal involvement and all the
official-capacity claims for monetary relief against the
remaining defendants. Defendants now move to dismiss
the remaining claims, largely relying on 28 U.S.C. §
1915(e)(2). For the following reasons, the Court DENIES
the motion.

### Factual and Procedural Background

In a complaint dated August 20, 2014, Manon brings
claims for unconstitutional conditions of confinement
against Wardens Hall and Brighthaupt and claims for
retaliation against Warden Brighthaupt and Deputy
Warden Jane/John Doe. ECF No. 1 (Compl.). As
explained in this Court's initial review order, Manon's
complaint contains the following allegations:

[O]n February 19, 2014, prison officials transferred
[the plaintiff] to Brooklyn Correctional Institution. At
Brooklyn, he had to sleep on the gym floor, and there
was dust in the air and only two bathrooms for more
than fifty inmates. The plaintiff wrote and spoke to
Warden Hall about his concerns[,] and Warden Hall
told the plaintiff [that it was a privilege to be at the
jail and] that he would be off of the gym floor soon.
The plaintiff remained at Brooklyn until March 14,
2014, when prison officials transferred him to Cheshire
Correctional Institution.

At Cheshire, the plaintiff had to sleep on the floor and
could only use the bathroom once every two hours. The
plaintiff wrote to Warden Brighthaupt on March 16,
2014 and wrote to Deputy Warden John/Jane Doe on
March 18, 2014. On March 26, 2014, officers issued
the plaintiff a disciplinary report and transferred him
to the restrictive housing unit. The plaintiff contends
that prison officials issued him the disciplinary report
because of his complaints about prison conditions at
Cheshire.

ECF No. 6 (Order) at 2. Manon seeks monetary,
injunctive, and declaratory relief. ECF No. 1 (Compl.) at
8 (.pdf pagination).

In March 2015, the Court conducted its initial review
order pursuant to 28 U.S.C. § 1915A, ruling as follows.
*Id.* The claims against Deputy Warden Corey failed to
state a claim because the complaint did not allege Deputy
Warden Corey's personal involvement. *Id.* at 3. The
Eleventh Amendment barred the official-capacity claims
for monetary damages against the remaining defendants.
*Id.* Manon stated plausible claims of unconstitutional
conditions of confinement against Hall, Brighthaupt, and
Jane/John Doe. *Id.*

Defendants now move to dismiss the complaint, largely
pursuant to 28 U.S.C. § 1915(e)(2). ECF Nos. 12
(Mot.); 12-1 (Mem.). Defendants raise the following
six arguments. ECF No. 12-1 (Mem.). The claims for

**Manon v. Hall, Not Reported in Fed. Supp. (2015)**

2015 WL 8081945

Case 9:17-cv-01115-GLS-ML   Document 26   Filed 10/03/18   Page 29 of 63

injunctive relief are moot because Manon was not subject to the allegedly unconstitutional conditions when he commenced the action. *Id.* at 5–6. Manon lacks standing because he failed to allege physical injury. *Id.* at 6–9. Defendants were not personally involved in the underlying allegations. *Id.* at 9–11. The claims are "utterly ridiculous" because "if such standard housing is adequate for our military troops, it necessarily must be more than adequate for sentenced prisoners like plaintiff." *Id.* at 15. Defendants are entitled to qualified immunity because "[they] would have no way of knowing that their conduct violated any clearly established rights of the plaintiff." *Id.* at 17. Sixth, the Eleventh Amendment bars the official-capacity claims for monetary damages. *Id.* at 1.

## LEGAL DISCUSSION

### I. Procedural Issues

**\*2** The motion necessitates a preliminary discussion on the nuts and bolts of procedure. Defendants largely rely on 28 U.S.C. § 1915(e)(2) as the procedural mechanism for seeking dismissal: the memorandum seeks dismissal pursuant to that statute and borrows the Rule 12(b)(6) standard for purposes of evaluating that request. *See* ECF No. 12-1 (Mem.). Section 1915(e)(2) is peculiar because that statute does not appear to provide litigants with a tool for seeking dismissal. Section 1915(e)(2) requires a court to review an *in forma pauperis* action *sua sponte*, does not mention an opposing party's motion to dismiss, and does not say anything about superseding the Federal Rules of Civil Procedure. 28 U.S.C. § 1915(e); *cf. Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal. 2007) ("These cases demonstrate that the sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring."). This Court found few examples where another court has ruled on a party's "Section 1915(e)(2) motion," but one case that this Court did come across highlights why a party should not rely on Section 1915(e)(2) at the expense of the Federal Rules of Civil Procedure. In *Landrith v. Gariglietti*, 2012 WL 171339, at \*1 (D. Kan. Jan. 19, 2012), the defendants moved to dismiss pursuant to Section 1915(e)(2) rather than Rule 12(b). To avoid the application of default judgment, the *Landrith* court construed the Section 1915(e)(2) motion as a Rule 12(b)(6) motion. *Id.* at \*2. This Court will follow likewise given that the motion references Rule 12(b)(6), but other courts may not be so

generous. [1] The Federal Rules of Civil Procedure contain no provision granting an extension of time to a party who files a noncognizable motion. *See* Fed. R. Civ. P. 12(a).

Construing the motion as brought pursuant to Rule 12(b)(6) creates problems of its own. Defendants' first two arguments are that Manon's claims are moot and that Manon lacks standing to bring his claims. Mootness and standing implicate the court's subject-matter jurisdiction. *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006) (Article III standing); *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (mootness). Federal Rule of Civil Procedure 12(b)(1) is the proper procedure vehicle for raising these challenges. Fed. R. Civ. P. 12(b)(1). The distinction between 12(b)(1) and 12(b)(6) matters because, *inter alia*, a dismissal for lack of subject-matter jurisdiction has no preclusive effect and permits a court to consider evidence outside the pleadings and (in some circumstances) weigh that evidence. *See, e.g.*, *Alliance for Envtl. Renewal, Inc.*, 436 F.3d at 88 n.6.

**\*3** The remaining arguments, which should have been asserted pursuant to Rule 12(b)(6), are partially redundant. The Court already conducted its initial review pursuant to Section 1915A, the statute requiring a court to screen "a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of governmental entity" to ascertain whether the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A. Section 1915A and Rule 12(b)(6) require the same substantive analysis. *Preston v. New York*, 223 F.Supp.2d 452, 462 (S.D.N.Y. 2002) ("[A] court evaluates whether a complaint 'fails to state a claim upon which relief may be granted' under 28 U.S.C. § 1915A under the same standard as a motion to dismiss brought under Rule 12(b)(6)."). Defendants' motion in effect seeks reconsideration of this Court's prior initial review order, but a party should pause before making such a request absent particularly compelling reasons such as "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1); *see Olmos v. Ryan*, 2013 WL 394879, at \*4 (D. Ariz. Jan. 31, 2013) ("The First Amended Complaint has already been screened pursuant to 28 U.S.C. § 1915, which uses the same standard as Federal Rule of Civil procedure 12(b)(6) .... Defendants do not cite sufficient grounds to reconsider." (internal citation omitted)). Outside of the grounds identified in Rule 60(b),

Manon v. Hall, Not Reported in Fed. Supp. (2015)

Case 9:17-cv-01115-GLS-ML    Document 26    Filed 10/03/18    Page 30 of 63

2015 WL 8081945

it would also be appropriate for a party to move for dismissal on the basis of a waivable defense because courts need not consider those defenses *sua sponte. See Alvarado v. Litscher*, 2000 WL 34239113, at *2 (W.D. Wis. Oct. 16, 2000) (ruling on qualified immunity defense despite prior initial review order). However, a party should never move to dismiss claims that have already been dismissed or seek dismissal of claims that the Court has determined to be non-frivolous solely on the basis that the moving party disagrees.

## II. Subject-Matter Jurisdiction

With these procedural observations in mind, the Court first turns to the substance of the standing and mootness arguments. As already discussed, such arguments are properly asserted pursuant to Federal Rule of Civil Procedure 12(b)(1). When ruling on a Rule 12(b)(1) motion, a court may consider evidence outside the pleadings. *Dukes v. New York City Employees' Ret. Sys., & Bd. of Trustees*, 581 Fed.Appx. 81, 82 (2d Cir. 2014) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). The Court may also weigh that evidence when assessing its subject-matter jurisdiction as long as the jurisdictional facts do not overlap with factual questions going to the merits. *Alliance for Envtl. Renewal, Inc.*, 436 F.3d at 88 & n.6. The plaintiff bears the burden of proving standing, *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011), but "[a] party seeking to have a case dismissed as moot bears" the burden of proof, which is "a heavy burden," *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005).

### A. Defendants' "Mootness" Argument

**\*4** Defendants argue that the claims for injunctive relief are moot because Manon was not subject to the allegedly unconstitutional conditions when he commenced this action. ECF No. 12-1 (Mem.) at 5–6. Defendants confuse standing and mootness. Mootness concerns the timing of the dispute. *See Alexander v. Yale Univ.*, 631 F.2d 178, 183 (2d Cir. 1980) ("This 'time element of standing' comes under the rubric of mootness doctrine."). In other words, "[w]hile *standing focuses on the status of the parties when an action is commenced*, the mootness doctrine requires that the plaintiff's claims remain alive throughout the course of the proceedings." *Etuk v. Slattery,* 936 F.2d 1433, 1441 (2d Cir. 1991) (emphasis added). Mootness does not apply here because Manon remains incarcerated in the same correctional institution as when he filed the action,

i.e., no transfer occurred during the life of this litigation. This distinction matters because, *inter alia*, the capable-of-repetition-yet-evading-review exception does not apply to standing. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 191 (2000). Accordingly, Defendants' argument to dismiss based on mootness is DENIED.

Defendants' mootness argument actually concerns standing, a question this Court must address *sua sponte*. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."). The relevant issue in this case is whether Manon has standing to enjoin and declare unconstitutional Wardens Hall's and Brighthaupt's housing policies when Manon was not subject to those policies when he commenced this action. Article III standing requires a plaintiff to show injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Injury in fact requires Manon to allege the existence of "a real or immediate threat that [he] will be wronged again." *Lyons*, 461 U.S. at 111. There are several facts demonstrating that Manon experiences a real, as opposed to a speculative, threat of again being wronged by the Wardens: (1) Connecticut inmates have no federal or state right to be incarcerated at a particular facility and thus may be transferred at any time; (2) Manon in particular has been transferred several times in a short period of time; (3) Connecticut is a small state with only a handful of prisoners and prison facilities; (4) according to Warden Hall, Manon has a "privileged" classification, limiting the number of facilities where he will be incarcerated; and (5) these conditions occurred at more than one facility. The Court therefore rules that Manon has demonstrated, at this stage in the litigation, that he has standing to bring claims for injunctive and declaratory relief.

### B. Defendants' Standing Argument

Defendants explicitly raise a different standing challenge, arguing that "plaintiff has failed to allege any injury from any of the conditions which he alleges existed at Brooklyn or at Cheshire. Plaintiff doesn't even allege discomfort, let alone pain and suffering." ECF No. 12-1 (Mem.) at 9. This argument confuses physical injury with injury in fact. The Constitution does not require a plaintiff to suffer a physical injury; a constitutional violation is sufficient.

Manon v. Hall, Not Reported in Fed. Supp. (2015)

2015 WL 8081945

Case 9:17-cv-01115-GLS-ML   Document 26   Filed 10/03/18   Page 31 of 63

*Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001) ("By contrast, where the right at issue is provided directly by the Constitution or federal law, a prisoner has standing to assert that right even if the denial of that right has not produced an 'actual injury.' "). Accordingly, Defendants' motion to dismiss based on standing is DENIED.

### III. Sufficiency of the Complaint

**\*5** The Court considers the remaining arguments in the context of Federal Rule of Civil Procedure 12(b)(6). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Litwin v. Blackstone Grp., L. P.*, 634 F.3d 706, 715 (2d Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court affords a pro se litigant "special solicitude" by interpreting a pro se complaint "to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks and alterations omitted). Additionally, "[a] pro se complaint should not be dismissed without the [c]ourt's granting leave to amend at least once when a liberal reading might give any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks and alterations omitted).

#### A. Personal Involvement

Defendants argue that Wardens Hall and Brighthaupt lack personal involvement because the complaint does not allege that "either Warden was aware of a serious and imminent risk to plaintiff's health or safety." ECF No. 12-1 (Mem.) at 9. This argument fails for several reasons. As Defendants correctly observe, some courts have ruled that informing a higher official of an unconstitutional act does not automatically imply personal involvement. *Rivera v. Fischer*, 655 F.Supp.2d 235, 238 (W.D.N.Y. 2009). However, Defendants fail to cite a key sentence of the *Rivera* opinion: "[t]hat does not necessarily mean, however, that a plaintiff can never establish a defendant's personal involvement based on the fact that the plaintiff wrote to that defendant about the alleged violations." *Id.* The allegations in this case make clear that the Wardens

were personally involved because they responded to the complaints. *See id.* ("If, however, the official does personally look into the matters raised in the letter, or otherwise acts on the prisoner's complaint or request, the official may be found to be personally involved."). Manon alleges that Warden Hall ignored his complaints and that Warden Brighthaupt placed Manon in the restrictive housing unit in retaliation for complaining. The complaint thus sufficiently alleges personal involvement of Wardens Hall and Brighthaupt.

The complaint plausibly suggests personal involvement for a second reason. A prison warden is likely the most appropriate official to sue concerning the living conditions of the prisoners he is in charge of housing. *Cf. Turkmen v. Hasty*, 789 F.3d 218, 237 (2d Cir. 2015) (recognizing *Bivens* claim for conditions of confinement against warden). That is particularly true where, as here, the conditions are structural and reflect a specific policy decision. As the persons in charge of managing the conditions of confinement, the Wardens would obviously be aware of those conditions and how those conditions affected their wards. Even if the evidence eventually demonstrates that Defendants are not the responsible persons, they are the appropriate parties to this action at this stage in the litigation. *See Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) ("[C]ourts have pointed out the appropriateness of maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability."). The Court therefore declines to dismiss the claims for lack of personal involvement.

#### B. Conditions-of-Confinement Claims

**\*6** Defendants next argue that Manon's conditions-of-confinement claims are "utterly ridiculous" and that a reasonable official would have no way of knowing that their conduct violated the Constitution. ECF No. 12-1 (Mem.) at 11–17. The Court disagrees. Specifically, Defendants argue that forcing inmates to sleep on the floor is perfectly acceptable. [2] Connecticut prison officials had a reason to know that requiring inmates to sleep on the floor in the ordinary course was unconstitutional. Over 30 years ago, the Second Circuit ruled that "forcing men to sleep on mattresses on the floors" violates the Constitution, but "[p]erhaps [may] be excused in the event of a genuine emergency situation, like a fire or riot."

Manon v. Hall, Not Reported in Fed. Supp. (2015)

2015 WL 8081945

*Lareau v. Manson*, 651 F.2d 96, 107–08 (2d Cir. 1981). The *Lareau* court also stated that placing as many 60 inmates in a dayroom with one correctional officer "does not comport with the duty to provide for adequate personal safety." *Id.* As one district court explained after holding a trial on a similar issue, "[p]roviding for the housing of inmates [in large dayrooms and forcing them to sleep on the floor] threatens the physical, mental[,] and emotional health and certainly threatens their personal and property safety. Such conditions are dehumanizing, intolerable[,] and certainly of no penological benefit." *Balla v. Bd. of Corr.*, 656 F.Supp. 1108, 1114 (D. Idaho 1987). Manon's allegations of sleeping on a floor in a gymnasium with more than fifty inmates therefore suggests plausible Eighth Amendment claims, and the Second Circuit's prior holding would have put a reasonable official on notice that these conditions, if proven to be true, would be unconstitutional.

Manon's allegations concerning the inadequate amount of bathroom facilities and (at one point) his inability to access those facilities also states plausible Eighth Amendment claims. Prison officials must furnish prisoners with "the minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and it cannot seriously be disputed that access to a functioning toilet constitutes a basic human need, *LaReau v. MacDougall*, 473 F.2d 974, 977–79 (2d Cir. 1972) (five days in small cell with only "a hole in the floor in the corner of the cell covered with a grate" constitutes a constitutional violation). Moreover, with respect to a restrained prisoner, the Supreme Court has recognized that "a deprivation of bathroom breaks ... created a risk of particular discomfort and humiliation." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). A prisoner's right to adequate bathroom facilities was therefore clearly established at the time of the alleged violations. *See Masonoff v. DuBois*, 336 F.Supp.2d 54, 63 (D. Mass. 2004) ("The right to 'adequate and hygienic means to dispose of [a prisoner's] bodily wastes' was clearly established at the time of the violation, which began ... in 1991." (alterations in the original)).

**\*7** Defendants seek dismissal by way of analogy, but their analogy demonstrates why it would be inappropriate at this stage in the litigation to dismiss the claims. Defendants argue that "men and women who serve in our military forces are often housed in large, dormitory-style housing with fifty to one hundred or more soldiers, sailors, airmen[,] or marines housed ... with only one or two

bathrooms." ECF No. 12-1 (Mem.) at 15. Putting aside the innumerable, material differences between enlisted members of our armed services and forcibly incarcerated persons, the Court has no way of evaluating the truth of Defendants' assertion. Aside from a few exceptions not relevant here, the Court may only consider Manon's allegations that he shared one or two bathrooms with over fifty inmates and was at one point permitted to use one only every two hours.

Relying on its experience, its common sense, and other information of which it may take judicial notice, the Court rules that these allegations state a plausible claim for the deprivation of adequate bathroom facilities and that a reasonable official, aware of his duty to furnish such facilities, would know that the alleged conditions constituted a deprivation. Manon does not seek a personal bathroom or unrestricted access to one, yet he also does not allege that the entire prison contained a single bathroom for a hundreds of inmates or entailed patently intolerable queues. His allegations fall somewhere in between these two extremes. The Court lacks sufficient expertise in deprivations of the commode to engage in the requested line-drawing exercise to determine whether a ratio of one bathroom per 50 inmates or even one bathroom per 25 inmates would be constitutionally intolerable. Without evidence from knowledgeable persons, the Court will not adopt some standard out of thin air. Further, common sense suggests that these conditions would be unacceptable: there are few situations in this society where fifty or even twenty-five people share a single bathroom for months at a time, most likely because it would be unhygienic and occasionally entail insufferable wait times. The Court is not alone in its assumption that the alleged facilities could constitute punishment. *Richardson v. Sheriff of Middlesex Cnty.*, 407 Mass. 455, 464 (1990) ("The judge's observations that in some areas there were as many as *sixty men confined with access to only two toilets* and one shower provide ample support for his conclusion that the lack of facilities in the multiple-occupancy areas rose to the level of punishment." (emphasis added)); *cf.* 29 C.F.R.1910.141 (OSHA regulation mandating that there be three toilets for every 36 to 55 employees and 4 toilets for every 56 to 80 facilities); CORE JAIL STANDARDS, American Correctional Association, *available at* http://www.bia.gov/cs/groups/public/documents/text/idc012203.pdf ("Inmates, including those in medical housing units or infirmaries,

**Manon v. Hall, Not Reported in Fed. Supp. (2015)**
2015 WL 8081945

Case 9:17-cv-01115-GLS-ML   Document 26   Filed 10/03/18   Page 33 of 63

have access to showers, toilets, and washbasins with temperature controlled hot and cold running water *twenty-four hours per day*." (emphasis added)). Perhaps with some evidence the Court could confidently opine on the requisite number of toilets per inmate, but the Court cannot say as a matter of law whether these conditions caused pain and humiliation without penological justification or were simply the ordinary, less-than-ideal circumstances confronted everyday by incarcerated persons who are constitutionally entitled only to life's basic necessities. The Court DENIES Defendants' motion to dismiss for failure to state a claim and qualified immunity.

### C. Further Observations

**\*8** The Court adds several further observations before concluding. Defendants argue that the official-capacity claims for monetary damages should be dismissed. ECF No. 12-1 (Mem.) at 1. This argument is moot because the Court has already dismissed these claims. ECF No. 6 (Order) at 3. Manon's claims for injunctive and declaratory relief are properly asserted against Defendants Warden and Hall in their official capacities, not their individual capacities. *Ziemba v. Armstrong*, 2004 WL 1737447, at *1 (D. Conn. July 30, 2004) ("Injunctive relief may only be recovered from parties in their official capacities."). Further, because the Court did not explicitly rule that the complaint stated plausible retaliation claims, it does so now. The filing of a grievance is a protected activity. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). Causation can be inferred from temporal proximity. *Id.*

Restrictive housing constitutes an adverse action. *See Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998) ("[P]rison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights."). Every reasonable official should know that a prisoner cannot be sent to a restrictive housing unit for complaining about allegedly unconstitutional conduct. Manon seeks only monetary damages in connection with these retaliation claims, not prospective relief (getting out of restrictive housing), and he does not allege that he is currently in restrictive housing or allege facts suggesting that he will be retaliated against again.

### CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss. The conditions-of-confinement claims shall proceed against Wardens Hall and Brighthaupt in their individual capacities for monetary damages and against them in their official capacities for injunctive and declaratory relief. The retaliation claims shall proceed against Warden Brighthaupt and Deputy Warden Jane/John Doe in their individual capacities for monetary damages.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2015 WL 8081945

---

Footnotes

1    In some ways, the Court here acts more generously than the Court in *Landrith*. Unlike the defendants in *Landrith*, Defendants did not file any motion or pleading in the time prescribed by this Court, i.e., Monday, May 15, 2015, and did not seek an extension. ECF No. 6 (Order) at 4–5. The Court, however, now extends the deadline *sua sponte*.

2    Despite Defendants unsupported allegations to the contrary, the complaint does not allege that Manon was provided a mattress.

---

2013 WL 394879
Only the Westlaw citation is currently available.
United States District Court, D. Arizona.

Timothy P. OLMOS, Plaintiff,

v.

Charles RYAN, et al., Defendants.

No. CV 10–2564–PHX–GMS–MEA.

|

Jan. 31, 2013.

**Attorneys and Law Firms**

Timothy Paul Olmos, Florence, AZ, pro se.

Paul Edward Carter, Office of the Attorney General, Tucson, AZ, for Defendants.

### ORDER

G. MURRAY SNOW, District Judge.

**\*1** Plaintiff Timothy P. Olmos filed this civil rights action under 42 U.S.C. § 1983 against various officials of the Arizona Department of Corrections (ADC). (Doc. 21.) Defendants move to dismiss certain Counts. (Doc. 132.)

The Court will grant the motion in part and deny it in part.

### I. Background

On screening of Plaintiff's 15–count First Amended Complaint, the Court directed Defendant Charles L. Ryan to answer Count III (conditions of confinement, including insufficient necessities such as food, clothing, and hygiene products and overcrowding); Plaintiff's due process claims in Counts VII (illegal taking of money from his account), Count VIII (unconstitutional taking of money through failure to pay interest on money in his prisoner account); Count IX (violating state law inmate compensation statutes); Count X (required surrender, without compensation, of orange clothing purchased at the inmate store); and Plaintiff's free speech claim regarding the incoming-mail policy in Count XI. (Doc. 27.) It also ordered Defendant Allen Ortega to answer the retaliation claim in Count XV. The remainder of the Defendants and claims were dismissed. (*Id.*)

Defendants now move to dismiss claims as follows:

- failure to exhaust administrative remedies: claims in Count VII (authority to charge for renewal of diabetic diet, rate of pay, and missed special diet meals); Count VIII (interest on inmate trust account); Count IX (pay received for kitchen work); Count X (return of orange jump suit on release); Count XI (items forbidden to receive by mail); and Count XV (retaliation); [1]

- time barred: claims in Count III (overcrowding, inadequate nutrition, and insufficient clothing);

  - not ripe for adjudication: claims in Count VII (charges for uneaten special diets, replacement ID cards, and costs relating to a positive urinalysis); claim in Count IX (rate of pay as a kitchen worker); Count X (relinquishment of his prison uniform); and

  - Count IX wage claims because Plaintiff does not qualify for the pay he seeks under Ariz.Rev.Stat. § 31–254.

(Doc. 146 at 10.)

Because there are numerous counts in the First Amended Complaint and Defendants assert multiple grounds for dismissal of several of the counts, the Court will address the parties' arguments count by count to determine what claims, if any, remain.

### II. Legal Standards

#### A. Exhaustion of Administrative Remedies

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Griffin v. Arpaio,* 557 F.3d 1117, 1119 (9th Cir.2009). Exhaustion is required for all suits about prison life, *Porter v. Nussle,* 534 U.S. 516, 523, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner,* 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). And a prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo,* 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

**\*2** Exhaustion is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 212, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. *Wyatt,* 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. *Id.* at 1119–20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. *Ritza v. Int'l Longshoremen's & Warehousemen's Union,* 837 F.2d 365, 369 (9th Cir.1988) (quotation omitted).

### B. Statute of Limitations

Section 1983 of Title 42, U.S.C., does not include its own statute of limitations. *TwoRivers v. Lewis,* 174 F.3d 987, 991 (9th Cir.1999). Therefore, federal courts apply the statute of limitations governing personal injury claims in the forum state. *Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *TwoRivers,* 174 F.3d at 991. In Arizona, the limitations period for personal injury claims is two years. *Id.; see also* Ariz.Rev.Stat. § 12–542 (providing that actions for personal injury must be commenced within two years after the cause of action accrues). A court applies state law to determine who has the burden of proof as to the statute of limitations. *See Carvalho v. Raybestos–Manhattan,* Inc.,794 F.2d 454, 457 (9th Cir.1986). Under Arizona law, the statute of limitations is an affirmative defense to be pleaded and proved by the defendant. *Kerwin v. Bank of Douglas,* 93 Ariz. 269, 379 P.2d 978, 981 (Ariz.1963).

Although the statute of limitations applicable to § 1983 claims is borrowed from state law, federal law continues to govern when a § 1983 claim accrues. *Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); *TwoRivers,* 174 F.3d at 991. Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.; Kimes v. Stone,* 84 F.3d 1121, 1128 (9th Cir.1996).

The Court must also apply any state rule for tolling to actions brought under § 1983. *Hardin v. Straub,* 490 U.S. 536, 544, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989); *Johnson v. State of California,* 207 F.3d 650, 653 (9th Cir.2000); *TwoRivers,* 174 F.3d at 992. Under Arizona law, the limitation period is tolled during mandatory exhaustion of administrative remedies. *See Brown v. Valoff,* 422 F.3d 926, 943 (9th Cir.2005); *Arizona Dep't of Revenue v. Dougherty,* 200 Ariz. 515, 29 P.3d 862 (Ariz.2001); *Third*

*& Catalina Assoc. v. City of Phoenix,* 182 Ariz. 203, 895 P.2d 115, 119 (Ariz.Ct.App.1994); *see also* Ariz.Rev.Stat. § 12–821.01(c) (cause of action required by law or contract to be submitted to administrative review process does not accrue until process exhausted)).

### C. Ripeness

Article III of the Constitution limits this Court's jurisdiction to "cases" and "controversies," which necessarily "precludes the exercise of jurisdiction by a federal court unless the plaintiff has suffered some actual injury or faces a threatened injury, and the injury is fairly traceable to the action challenged and is likely to be redressed by a favorable decision." *Culinary Workers Union v. Del Papa,* 200 F.3d 614, 617 (9th Cir.1999) (citing *Valley Forge Christian College v. Americans United,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). Further, when a plaintiff seeks declaratory and injunctive relief, the plaintiff must demonstrate a "substantial controversy ... of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Culinary Workers Union,* 200 F.3d at 617 (quoting *Ross v. Alaska,* 189 F.3d 1107, 1114 (9th Cir.1999) (internal quotation and emphasis omitted)). A claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (internal quotations and citations omitted).

### III. Count III

**\*3** Plaintiff alleges in Count III that ADC provides (1) meals with insufficient nutrition, (2) insufficient clothing between laundering, (3) insufficient hygiene products, (4) insufficient cleaning products, (5) insufficient living facilities, (7) insufficient staff, leading to a delay in escort to the medical unit and increased violence, and (8) no system to notify staff of emergencies. (Doc. 21 at 6.)

### A. Parties Contentions

#### 1. Defendants

Defendants withdraw their Motion to Dismiss with respect to failure to exhaust administrative remedies on Count III, but they note that Plaintiff fails to presents evidence that Ryan was ever made aware of the overcrowding complaint—an argument that Defendants

assert they will present on summary judgment. (Doc. 146 at 2.) Defendants also argue that the claims in Count III are time barred. (Doc. 132 at 15; Doc. 146 at 7.) Plaintiff was transferred to the Winchester Unit on July 23, 2008, but he did not bring this action until November 19, 2010. Defendants assert that any claims arising out of Plaintiff's grievance about inadequate nutrition and overcrowding are time barred because they accrued before November 28, 2008. (Doc. 132 at 15.) Defendants assert that although Plaintiff claims that he submitted an informal resolution about insufficient clothing and laundry service on June 4, 2009, the complaint related to prison operations rather than the ADC policy itself. In addition, because Plaintiff did not claim that Ryan was personally involved in providing clothing and laundry service, the allegation does not state a claim against Ryan. (*Id.* at 15.)

### 2. Plaintiff

Plaintiff contends that Defendants did not raise timeliness in response to the grievances. He claims that each day that he was provided a nutritionally inadequate diet constituted a discrete act. (Doc. 144 at 10–11.) Plaintiff was living at Winchester where the lack of grievance forms and unresponsiveness to grievances made administrative remedies unavailable. While Plaintiff was at South Unit, on August 2, 2010, Ryan revised the menu and the means to challenge this menu was cut off because administrative remedies were unavailable. (*Id.* at 10.)

Plaintiff addresses the argument that he has not stated a claim against the Director. (*Id.* at 11.) He argues that the policies which prohibit him from wearing dirty clothes but do not allow him to wash clothing in his cell make Plaintiff completely reliant on Ryan's centralized laundry service and that Ryan is responsible for ADC policies pursuant to Ariz.Rev.Stat. § 41–1604(A)(1). Plaintiff's Informal Resolution complained about the inability to wear clean clothes every day. Plaintiff argues that he has stated a claim. (*Id.*)

### 3. Reply

Defendants reassert their argument regarding the statute of limitations and assert that the Ninth Circuit has rejected the continuing-violation theory. (Doc. 146 at 7.) As to the claims regarding inadequate nutrition, they assert that Plaintiff's excuses for not filing a grievance after August 2, 2010 are conclusory. They further argue that there is no

*respondeat superior* liability under § 1983 and there is no personal involvement by Ryan. (*Id.*)

### B. Analysis

**\*4** Defendants have withdrawn their defense regarding exhaustion of administrative remedies on this claim because Plaintiff provided evidence that he submitted his Director's appeal for these claims. (Doc. 146 at 1, ref. Doc. 52–1 at 81.) The referenced document is a Director's Appeal, dated January 2, 2009. It is unclear from the face of this document what issues are covered by it. Defendants note that Plaintiff acknowledges that he was transferred to Winchester in July 2008. (Doc. 146 at 7.) The statute of limitations is tolled during the period of exhaustion of administrative remedies, which could not have been completed until some time after January 2, 2009.[2] Therefore, the Complaint was filed within two years, and the claims are not time barred.

As for Defendants' argument that Plaintiff fails to state a claim, the Court rejects it. The First Amended Complaint has already been screened pursuant to 28 U.S.C. § 1915, which uses the same standard as Federal Rule of Civil procedure 12(b)(6). *Resnick v. Hayes,* 213 F.3d 443, 447 (9th Cir.2000). Defendants do not cite sufficient grounds to reconsider. Moreover, it is unclear why Defendants would raise this argument under the guise of timeliness, which is an unrelated issue.

But as noted in this Court's Order of November 13, 2012, without a showing of a constitutional violation as to inmates' basic needs, overcrowding itself is not a cognizable claim. (Doc. 141 at 4, citing *Toussaint v. Yockey,* 722 F.2d 1490, 1492 (9th Cir.1984).)

The motion to dismiss is denied as to claims in Count III.

### IV. Count VII

In Count VII, Plaintiff alleges a due process violation by Ryan who promulgated "ADC policies that charge inmates [accounts] for photocopies, legal phone calls, legal supplies (paper, pens, etc.), legal mail postage, repayment for positive urinalysis tests, uneaten special diets, follow-up visits and prescription renewals for chronic diseases in violation of A.R.S. § 31–201.01(I)(12), replacement ID cards and ID clips, and GED testing." (Doc. 21 at 11.)

### A. Parties' Contentions

#### 1. Defendants

Defendants argue that Plaintiff failed to exhaust administrative remedies as to being charged for legal copies, renewing his diabetic diet, deductions from his pay, and missed special diet meals. (Doc. 132 at 3–4.) They assert that the only completed grievance regarding a matter actually affecting him was the grievance concerning legal copies. (*Id.* at 4.) They contend that Plaintiff does not claim to have grieved charges for legal phone calls, legal supplies, legal mail postage, repayment for positive urinalysis, follow up doctor visits and prescription renewals, replacement ID cards and clips, and GED testing costs. (Doc. 132, Ex. B, Pl.'s Resp. to Interrog. No. 1.) They also assert that Plaintiff admits that his complaints about being charged for uneaten special diets, replacement ID cards, and costs relating to positive urinalysis pertain to possible future charges. (*Id.* at 4; ref. Doc. 116 at 2, 8.)

 **\*5** In their reply, Defendants withdraw their motion to dismiss for failure to exhaust administrative remedies as to this claim, "except with respect to [Plaintiff's] claim that the director had no statutory authority to make various deductions from ADC inmate accounts." (Doc. 146 at 3.) They request that the Court indicate that the only issue to be litigated in Count VII is Plaintiff's "general claim that the Director of the ADC has no statutory authority to charge inmates for services provided by the prison, especially since [Plaintiff] failed to present evidence that he ever complained to Director Ryan about specific deductions." (*Id.*) They later conclude that as to Count VII, Plaintiff failed to exhaust as to charges "for renewal of a diabetic diet, rate of pay, [and] missed special diet meals." (*Id.* at 10.) It is unclear what part of their motion Defendants have withdrawn, but the last statement is the clearest description of remaining exhaustion-defense claims, so the Court will address only diabetic diet, rate of pay, and missed special diet meals.

Defendants assert that in his Director's appeal in Grievance No. A02–056–010, Plaintiff complained only that Director Ryan had no statutory authority to make various deductions from ADC inmate accounts. (Doc. 146 at 3; Doc. 132, Ex. A, Attach. 3.) Plaintiff did not object to specific deductions. (Doc. 146 at 3.) They claim that Plaintiff did not rebut Defendants' evidence that, when he attempted to grieve additional specific issues

relevant to Count VII, he did not do so properly and his grievances were unprocessed. (*Id.,* ref. Doc. 8–3 at 41–52.) His Informal Resolution complaining about being charged to renew his diabetic diet was not processed as it was neither signed nor dated. (Doc. 146 at 2; ref. Doc. 8–3 at 46.) Defendants assert that the forms require signing and dating. Plaintiff did not contest Defendants' evidence that his February 10, 2010, grievance was not processed because he was trying to challenge a rate of pay he had been receiving since 2007 and that the grievance was therefore not timely. (Doc. 146 at 2; ref. Doc. 8–3 at 47.) He also did not rebut Defendants' evidence that his January 10, 2008, grievance about being charged for special diet meals was not processed because he did not show that he had tried to resolve his issue informally. (Doc. 146 at 2; ref. Doc. 8–3 at 48–49.) They assert that because his grievances were not processed, Plaintiff never made Ryan aware of any of these particular issues.

Defendants also contend that certain of the claims in Count VII are not ripe for adjudication; namely, uneaten special diets, replacement ID cards, and cost relating to positive urinalysis. (Doc. 132 at 17.) These relate to possible future charges. Defendants also argue that Plaintiff was not a kitchen worker when he tried to grieve the deductions from his pay. (*Id.*)

Defendants further assert that the claims in Count VII are time barred insofar as they accrued earlier than November 28, 2008, which is two years before the filing date of the Complaint. (Doc. 132 at 15–16.) They note that grievance A02–056–010 was processed within two years of bringing this action but that Plaintiff had previously submitted an informal resolution complaining about being charged for legal copies on January 8, 2008. They contend that the Ninth Circuit has rejected the continuing-violation theory. (*Id.* at 16.) In their reply, they withdraw their timeliness argument as to charges for renewal of the medical diet. (Doc. 146 at 8.) However, they again state that the claim for charges for legal copies is time barred because the Ninth Circuit has rejected the continuing-violation theory. (*Id.*)

#### 2. Plaintiff
 **\*6** Plaintiff alleges generally that he had difficulty exhausting remedies at Winchester due to widespread unavailability of forms and failure to properly respond to grievances, including fraudulent refusal to process grievances; he refers to this as Winchester Grievance

Fraud. (Doc. 144 at 4.) Grievance Coordinator Martinez made himself unavailable by not responding to inmate letters requesting forms or permitting unfettered access to his office to obtain forms. Complaints were made to ADC staff. In the early part of June 2009, Baker was appointed interim grievance coordinator. Baker called Plaintiff to her office to discuss his informal complaints and referred to most of his claims as "bullshit" and threatened to place him on the grievance abuse list. Plaintiff rewrote all of his grievances and submitted them on June 8, 2009. CO IV Hall told Plaintiff the complaints had merit and Plaintiff met with Deputy Warden Mendoza about a medical grievance not at issue here. In July 2009, Hoyt was named Grievance Coordinator and on July 29, he returned the grievances as having been rejected by Baker. (*Id.*)

As to Count VII, Plaintiff asserts that when he complained to Ryan about charging assessments without authorization, his challenge covered "all illegal monetary assessment policies" and was not limited to those listed. (*Id.* at 6.) The Deputy Warden determined that legal copies fell within the scope of the grievance by stating that the deductions were proper. The Director affirmed the decision but broadened the scope further by stating that "all deductions taken from your Inmate Bank Account have been within statute and Department policy." (*Id.,* ref Doc. 132, Ex. A, Attach. 3 at 1.) Plaintiff argues that his demand was to abolish all monetary assessments not rooted in statute. He asserts that he and the Director referred to deductions from inmate accounts that included debits based on transactions at the inmate store, which is important because of his claims as to legal supplies and postage; therefore the response that referred to all deductions included inmate store transactions. (*Id.*)

As to the return of the informal grievance regarding a charge to renew Plaintiff's medical diet, which was returned because it was not signed or dated, Plaintiff argues that Department Order 802 has no explicit provision for returning documents that are inadvertently unsigned. (*Id.* at 7; ref. Doc. 8–3 at 47.) The refusal to process the informal resolution was improper.

Plaintiff also asserts that the issues of uneaten special diets, replacement ID cards, and costs relating to positive urinalysis are ripe, citing *United States v. Williams,* 356 F.3d 1045, 1049–51 (9th Cir.2004) and other cases. (Doc. 144 at 14–15.)

As to timeliness, Plaintiff addresses charges for legal copies and argues that his claim did not accrue in January 2008 because he was also charged for legal copies in August 2010. (Doc. 144 at 13.)

**B. Analysis**

**\*7** The Court will grant the motion in part and deny it in part as to the claims in Count VII.

The Court has reviewed the grievance documents for grievance A02–056–010, which relate to this issue. (Doc. 132, Ex. A, Attach. 3 at 1–11.) The inmate letter states that Ryan has exceeded his authority with policies that levy assessments without authorization. "Assessments include, but are not limited to costs associated with: replacement IDs and ID clips, legal supplies, legal mail postage, legal phone calls, and urinalysis testing. My resolution is that the Director remove all illegal monetary assessment policies, and refund all monies assessed via those policies." (*Id.* at 3.) The documents to not refer to assessments for renewal of a diabetic diet, rate of pay, [and] missed special diet meals.[3] The Court rejects Plaintiff's argument that assessments for renewal of a diabetic diet, rate of pay, [and] missed special diet meals are included although not specifically referred to. Without the specific reference, prison officials would not be aware of the nature of the claim. *See Griffin,* 557 F.3d at 1120 ("a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.") The Court also rejects Plaintiff's argument that the medical-diet informal grievance that was returned for failure to sign it was improperly processed. Whether there are specific grounds in DO 802 to reject it based on failure to sign, it was not, in fact signed as required by the form, so the rejection was not improper, and Plaintiff did not pursue the matter further.

Plaintiff failed to exhaust his administrative remedies as to assessments for renewal of a diabetic diet and missed special diet meals. The Court agrees that deductions from pay are not part of this claim and are more properly considered in Count IX.

As to ripeness, Plaintiff states in his motion for summary judgment, which is not before the Court at this time, that he has been charged for photo copies, legal telephone calls, legal supplies, ID clips, follow-up visits for health services, and prescription renewals for chronic diseases and that

Ryan's policies open him to future debits for uneaten special diets, replacement ID cards, and costs associated with a positive urinalysis. (Doc. 116 at 2, 8.) He states that he is not a drug user and that his claim is designed to cover false positives. He further states in his motion for summary judgment that if his ID card is lost or stolen, he will be charged for a new ID card. (*Id.* at 8.) The Court finds that the claims for charges for replacement ID cards, uneaten special meals, and positive urinalysis are not ripe for adjudication because they depend upon hypothetical future events that may not occur at all. *See Texas,* 523 U.S. at 300. Plaintiff's authority is not persuasive; for example in *Williams,* to which Plaintiff cites, the Court of Appeals held that a challenge to mandatory medication as a condition of supervised release was ripe but distinguished that case from *United States v. Linares,* 921 F.2d 841 (9th Cir.1990), where the prisoner was not challenging a condition of his release but rather potential revocation of supervised release. *Williams,* 356 F.3d at 1051. The Court noted that the challenge in *Linares* was to a hypothetical future revocation of supervised release.

**\*8** As to the statute of limitations defense, again, the statute of limitations is tolled during the period of exhaustion of administrative remedies, which appears to have been completed on November 23, 2010. (Doc. 132, Ex. A, Attach. 3 at 11.) Therefore, the Complaint was filed within two years. Other than a claim for charges regarding legal copies, it is unclear what, if any, charges were assessed that might be outside the statute of limitations, so the Court need not determine at this time whether such claims are time barred. Moreover, as *Pouncil v. Tilton,* 704 F.3d 568, 2012 WL 5871659, at \*10–12 (9th Cir. Nov.21, 2012), demonstrates, the analysis is more complicated that merely labeling an event a discrete act. *Pouncil* contrasts a line of cases represented by *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) and *Knox v. Davis,* 260 F.3d 1009, 1014 (9th Cir.2011), with a line of cases represented by *National RR Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Defendants have the burden of proof on the statute of limitations defense, and on the briefing and limited record here, the Court cannot say that claims for charges for legal copies are time barred.

### C. Conclusion

The Court will dismiss claims for charges related to assessments for renewal of a diabetic diet and missed special meals because Plaintiff failed to exhaust administrative remedies on these claims. The Court will dismiss claims for replacement ID and positive urinalysis because the claims are not ripe. The motion is denied as to the other claims.

### V. Count VIII

In Count VIII, Plaintiff raised a claim that his Fifth and Fourteenth Amendment rights were violated by Ryan when he failed to pay either actual or constructive interest on moneys held in Plaintiff's prisoner spendable account and dedicated discharge account. Plaintiff alleges that this amounts to an unconstitutional taking of his property. (Doc. 21 at 12.)

### A. Parties Contentions

#### 1. Defendants

Defendants assert that Plaintiff failed to exhaust administrative remedies as to this claim. They contend that, according to Plaintiff, he has had a prisoner account since 2005 and that he has never received an interest payment for funds held in it. (Doc. 132 at 5; ref. Doc. 116 at 10.) After he submitted an Informal Resolution, Plaintiff claims that he initiated a grievance on September 9, 2009, and that, after he received no response, he appealed to the Warden on October 11, 2009. (Doc. 132 at 5, Ex. B at 2.) Plaintiff further claims that he received no response from the Warden and, because the 100–day period to complete a grievance process had expired, the grievance process had become unavailable to him and the therefore had exhausted his administrative remedies. But Defendants argue that because Plaintiff initiated his grievance after July 13, 2009 (when the new version of DO 802 became effective), the 100–day time limit was no longer applicable. (Doc. 132, Ex. A, Attach.2.) Rather, when Plaintiff received no response to his appeal from the Warden after 20 work days, he was free to submit his appeal to the Director. (*Id.* at DO 802.01 § 1. 11, 802.04 § 1.3.) His failure to do so means he did not complete the ADC grievance process and therefore failed to properly exhaust available administrative remedies.

**\*9** Defendants also argue that Plaintiff's claims are time barred because they accrued in 2005 when he opened his account and he did not sue until November 2010. (Doc. 132 at 16.)

### 2. Plaintiff

Plaintiff asserts that he filed his informal resolution on June 24, 2009, so the version of DO 802 effective in March 2000 applied. That version of the grievance process capped the length of the grievance at 100 days and the lack of attentiveness by ADC staff led to an out of time response by ADC at every level so that the time for the process expired and Plaintiff satisfied the exhaustion requirement. (Doc. 144 at 8.)

### 3. Reply

Defendants dispute that the prior version of DO 802 applied, arguing that testimony shows that "for grievances initiated before July 13, 2009, DO 802 with the effective date of March 3, 2000 applied. Grievances initiated after July 13, 2009, are governed by the policy as revised on that date and subsequent May 28, 2010, modification through Director's Instruction 287 ('DI 287'.)" (Doc. 146 at 3, ref. Doc. 132, Ex. A, Aguilar Decl. ¶ 5.) Defendants argue that the date of the grievance, not the date of the informal resolution, determines which grievance policy applies. (Doc. 146 at 3.) They also note that Plaintiff attempted to exhaust according to the new process that did not require the grievance to be responded to by the Grievance Coordinator. (*Id.* at 4.)

### B. Analysis

The Court finds that Plaintiff failed to exhaust his administrative remedies as to the claim in Count VIII. Defendants have met their burden to demonstrate the availability of an administrative process. *See Wyatt,* 315 F.3d at 1119; *see also Brown v. Valoff,* 422 F.3d 926, 936–37 (2005). Plaintiff fails to provide a legally sufficient excuse for his failure to exhaust the claim in Count VIII.

Plaintiff asserts in his Supplemental Responses to Interrogatories that on June 24, 2009, he initiated the grievance process on the Director's refusal to pay interest on the trust account by submitting an informal resolution to CO III Douglas and that when Douglas did not respond, Plaintiff acted with "unrequired diligence" by proceeding to the next level by filing an inmate grievance on September 9, 2009. (Doc. 132, Ex. B at 2.) When he received no response, he "again acted with "unrequired diligence" by moving on to the next level of review by submitting an appeal to the warden on October 11, 2009.

The Warden never responded and the 100–day time frame expired. (*Id.*)

The Court finds that the grievance was initiated after the July 13, 2009 effective date of the new version of DO 802, which no longer had a 100–day limit. More important, both grievance procedures provided that expiration of the time limit at any given point entitled the inmate to proceed to the next level. (Doc. 132, Ex. A, Attach. 1, DO 802.07 § 1.2.4, effective March 2000, Attach. 2, DO 802.01 § 1.11, effective July 13, 2009.) In other words, nonresponse by ADC staff did not excuse failure to proceed to the next step in the process. And the language regarding the 100–day limit states "[t]he maximum length of time for completion of the grievance process is 100 days, from initiation to final disposition. Expiration of the time limit at any level in the process shall entitle the inmate to proceed to the next review level, unless the inmate agrees in writing to the extension." (*Id.,* Attach. 2, DO 802 § 1.2.4.) A fair reading of this provision indicates that the 100–day limit was not intended to cut off an inmate's right to the grievance process but rather to place an outside limit on prison officials. Finally, Plaintiff's explanation for his failure to exhaust is not consistent with his own prior statements. In his First Amended Complaint, he claimed that he did not exhaust this claim because "staff did not reply to a written request for a grievance form." (Doc. 21, Count III at 12, ref. Count V at 8.)

 **\*10** Here, it is undisputed that Plaintiff failed to exhaust his grievance by proceeding to the Director level. Defendants have met their burden to demonstrate the availability of a grievance process, and Plaintiff fails to establish a legally sufficient reason for not exhausting his administrative remedies.

The Court will dismiss Count VIII without prejudice.

### VI. Count IX

Plaintiff alleges a due process violation; specifically, that Ryan "violated the inmate compensation requirements of A.R.S. § 31–254(A) and A.R.S. § 41–1624.01(A)–(B)," that he "downgraded the skill level of education aides ... from skilled to semi-skilled when an automated system (called TOSS) was rolled out without changing any of the duties of the position to reflect the lowered skill level, resulting in a 5¢ per hour decrease in compensation," and that he has "continued the ADC's policy of not paying kitchen and inmate store workers (who perform labor

or services for Defendants Canteen and Keefe, who are private contractors) a minimum of $2.00 per hour." (Doc. 21 at 13.) Plaintiff further alleges that Ryan "financially injured" him "by underpaying him 5¢/hour in his current position as an education aide." (*Id.*)

**A. Parties' Contentions**

Defendants concede that Plaintiff completed the grievance process as to pay he received as an education aide-grievance A02–050–010. (Doc. 146 at 4.) But they assert that he did not exhaust administrative remedies regarding his rate of pay when he worked in the kitchen; they maintain that the grievance he filed was not processed because he was not then employed there, noting that an informal complaint must be submitted within 10 workdays from the date of the action that caused the complaint. (Doc. 132 at 12, Ex. A, Attach. 5 at 8–9.) Plaintiff argues that he did not know of his claim because Ryan "hid the claim.. by publishing a minimum $2.00 per hour pay scale" in the inmate compensation policy, DO 903. (Doc. 144 at 8.) Plaintiff claims that he stumbled on the claim while researching the claim of compensation as an education aide and that under *Cabrera v. City of Huntington Park,* 159 F.3d 374, 379 (9th Cir.1998), Plaintiff could not be expected to challenge a problem of which he had no knowledge. (Doc. 144 at 9.) Defendants reply that DO 802 does not refer to a discovery rule, which is consistent with the Ninth Circuit's rejection of the "continuing violations theory." (Doc. 146 at 5.)

Defendants further argue that the claim regarding kitchen work was not ripe and that had Plaintiff exhausted this claim he might have been entitled to a higher wage if he could establish that he was employed pursuant to a contract with the food service subcontractor, Canteen. (Doc. 132 at 17.) In their reply, Defendants assert that Plaintiff is not entitled to the minimum wage "unless he, not the ADC, was working pursuant to a contract with a private" entity. (Doc. 146 at 9–10, citing *Hale v. Ariz.,* 993 F.2d 1387, 1400 (9th Cir.1993).) Because Plaintiff was not a party to the contract with the food service subcontractor entitling him to the minimum wage, he is only entitled to compensation the director determines. (*Id.*)

**\*11** Defendants also ask that this Count be dismissed because Plaintiff has no right to compensation for his work as an education aide, asserting that ADC is not required to pay inmates for work done for ADC, but that inmates are "entitled to compensation for work

performed for private parties." (Doc. 132 at 17, citing *Piatt v. MacDougall,* 773 F.2d 1036, 1036 (9th Cir.1985), and *Hale,* 993 F.2d at 1400.)

Plaintiff argues that Defendants' claim that he has no right to compensation for work done for ADC contradicts the plain language of the Ariz.Rev.Stat. § 31–254(A) and that the state cannot deny compensation without due process. (Doc. 144 at 16.) As to the contract requirement, Plaintiff asserts that he is currently employed as a dishwasher and he spoke to the food service manager who stated that the use of inmate labor under the supervision of the company's employees "is stipulated in her company's contract with ADC, and that it is the responsibility of her company's employees to train inmate laborers in the proper execution of their assigned job duties." (*Id.,* Ex. C § 4.)

**B. Analysis**

The Court will deny Defendants' motion as to Count IX.

As to the statute of limitations, the Court rejects Defendants' argument that because DO 802 contains no reference to a "discovery rule," no such rule can apply to the timeliness of a grievance. In *Ngo,* the Ninth Circuit applied statute-of-limitations principles to determine when a claim accrued for purposes of the timeliness of an inmate grievance even though the Court of Appeals did not point to "inevitable consequence" language in the grievance procedure. *Ngo,* 539 F.3d at 1109–10.

Apparently Plaintiff was employed as a kitchen worker in 2007 and in 2009. (Doc. 144 at 8.) Under the discovery rule, the limitations period does not begin until the plaintiff "has knowledge of the 'critical facts' of his injury, which are 'that he has been hurt and who has inflicted the injury.' " *Bibeau v. Pac. Nw. Research Found., Inc.,* 188 F.3d 1105, 1108 (9th Cir.1999) (citing *United States v. Kubrick,* 444 U.S. 111, 122, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)); *see also McDonald v. Macabuhay,* No. CV 07–1022–PHX–GMS, 2009 WL 2432833, at *6, 2009 U.S. Dist. LEXIS 73851, at *14 (D.Ariz. Aug. 10, 2009) (citing *Bibeau,* 188 F.3d at 1108); *Nunez v. City of Los Angeles,* 147 F.3d 867, 870 (9th Cir.1998) (applying the discovery rule to a substantive due process claim but finding the claim barred by the statute of limitations.) On this record, the Court cannot determine whether the discovery rule applies or, if it does, whether the grievance was timely.

Although Plaintiff claims that Ryan "hid" the wage issue, he also notes that the $2.00 minimum was in DO 903.

As to Defendants' statutory arguments, Ariz.Rev.Stat. § 31–254(A), on which Plaintiff relies for this claim, provides that:

> Each prisoner who is engaged in productive work in any state prison or institution under the jurisdiction of the department or a private prison under contract with the department as a part of the prison industries program shall receive for the prisoner's work the compensation that the director determines. The compensation shall be in accordance with a graduated schedule based on quantity and quality of work performed and skill required for its performance but shall not exceed fifty cents per hour unless the prisoner is employed in an Arizona correctional industries program pursuant to title 41, chapter 11, article 3. If the director enters into a contract pursuant to § 41–1624.01 with a private person, firm, corporation or association the director shall prescribe prisoner compensation of at least two dollars per hour. Compensation shall not be paid to prisoners for attendance at educational training or treatment programs, but compensation may be paid for work training programs.

**\*12** It appears to the Court that Ariz.Rev.Stat. § 31–254(A) applies only to work performed as part of the prison industries program, known as Arizona Correctional Industries, Ariz.Rev.Stat. §§ 41–1621 to 41–1630, and that the $2.00 per hour provision applies only to work performed where the Director of ADC enters into a contract pursuant to § 41–1624.01 with a private entity. Case law indicates that the prison labor program also permits the establishment of an Inmate–Operated Business Enterprise (IOBE), *Hale,* 993 F.2d at 1390, and possibly other variations, *Bilke v. State,* 221 Ariz. 60, 209 P.3d 1056, 1057 (Ct.App. Ariz 2009) (where

inmates seeking the minimum wage [4] were of three types: those working for the correctional industries program, those working for an IOBE, and those who worked for Cutter Biological on prison grounds.) In *Hale,* inmate Berry worked for an IOBE and sought the minimum wage; the Court held that "[i]n order to show entitlement under § 31–254, a prisoner must show that he is working pursuant to 'a contract ... with a private person, firm, corporation or association,' " citing Ariz.Rev.Stat. § 31–254(A). 993 F.2d at 1390, 1400. In other words, as to Berry, the only issue before the Court of Appeals in *Hale* was Berry's entitlement to the minimum wage; contrary to Defendants' assertion, the Court of Appeals did not rule that the inmate was entitled to no compensation at all because he was not working for a private entity. In addition, the Correctional Industries statute provides that:

> A. The director shall compensate prisoners for their services pursuant to § 31–254.

> B. The director or his designee may contract with any state agency, political subdivision or state department or any private person, firm, corporation or association to provide services or labor rendered by prisoners.

Ariz.Rev.Stat. § 41–1624.01. Because Correctional Industries can contract with entities other than private entities, it appears to the Court that, although the $2.00–per–hour provision is limited to contracts with private entities, the remainder of § 31–254 is not limited to compensation for work performed for private entities.

It is not clear from the pleadings whether Plaintiff's work as an education aide was pursuant to Correctional Industries, and this is not a motion for summary judgment. The Court will not dismiss the claim regarding pay as an education aide. Moreover, as to the claim regarding kitchen work for $2.00 per hour, the Court disagrees with Defendants' interpretation of the holding in *Hale; Hale* does not limit the provision to the situation of a contract between private parties and inmates. The plain language of the statute refers to the *Director* entering into a contract with a private entity, not the inmate. *See* Ariz.Rev.Stat. § 31–254(A).

The Court will deny the motion to dismiss Count IX.

## VII. Count X

In Count X, Plaintiff claims that his Fifth and Fourteenth Amendment rights to "due process ..." were violated by Ryan when he promulgated "an ADC policy that demands that Plaintiff Olmos surrender all orange-colored clothing purchased at the inmate store to ADC staff on his release date without any compensation." (Doc. 21 at 14.) Plaintiff alleges that "[u]pon release," he "will incur a property injury by having his clothing taken by ADC staff due to Defendant Ryan's policy" and he will be injured financially by "being compelled to purchase replacement clothing." Although Plaintiff does not allege that he has actually been injured yet, he seeks both declaratory and prospective injunctive relief. (*Id.*)

### A. Parties Contentions

**\*13** Defendants assert that Plaintiff submitted a grievance about the issue in Count X but his grievance was unprocessed because he did not show how he was adversely affected since he is not even tentatively scheduled to be released until May 10, 2019. (Doc. 132 at 6.) Plaintiff did not resubmit his grievance. (*Id.*) Plaintiff claims this was a part of the grievances returned as "false [ly] unprocessed," and, therefore, Plaintiff exhausted because the process was not available to him. (Doc. 144 at 9.) Defendants reassert that there is no way that Plaintiff can show that he has been adversely affected by the policy at this time and that DO 802 does not provide a process for inmates to attempt to vindicate hypothetical claims about what may happen in the future. (Doc. 146 at 5.)

Defendants also argue that this claim is not ripe because Plaintiff has not been released or required to relinquish his uniform. (Doc. 132 at 17; Doc. 146 at 9.)

### B. Analysis

The Court holds that this claim is not yet ripe for adjudication. According to Plaintiff, the policy will apply, if at all, only at the time of Plaintiff's release from custody. At this time, that release is not scheduled until 2019. Plaintiff's sentence could be extended based on a new conviction or he could die before his release date; in other words, the claim depends upon a hypothetical future event that may not occur at all. *See Texas,* 523 U.S. at 300. This is not a "substantial controversy ... of sufficient immediacy and reality." *Aydin Corp. v. Union of India,*

940 F.2d 527, 528 (9th Cir.1991) (internal citations and quotations omitted).

The Court will dismiss Count X.

## VIII. Count XI

In Count XI, Plaintiff asserted a First Amendment violation by Ryan who instituted "incoming mail policies" that "abridg[e] his free speech rights in a manner that does not pass the *Turner* test." (Doc. 21 at 15.) Specifically, the policies prohibit inmate receipt of (1) tax forms; (2) unused greeting cards, stationary, envelopes, and bookmarks; (3) calendars; (4) circulars, catalogs, and ads; (5) information printed off the ADC website that does not threaten security; (6) non-commercially recorded CDs created during the course of a legal proceeding; and (7) prohibiting inmates from joining pre-pay music clubs.

### A. Parties Contentions

Plaintiff's only relevant grievances regarding this claim were a complaint about the policy against inmates receiving tax forms and blank stationary and a complaint about the policy prohibiting receipt of mail over ten pages long. (Doc. 132 at 6.) Defendants assert that Plaintiff did not exhaust regarding the other issues. They allege that he has not shown how he was adversely affected by ADC's policies or why he believes that these issues accrued in the first half of 2009. (Doc. 146 at 6.) Plaintiff argues that he began challenging Ryan's bans on receipt of tax forms and stationary but that the grievances were "swallowed up by the Winchester Grievance Fraud, making administrative remedies unavailable." (Doc. 144 at 9; ref. Doc. 52–3 at V 13–V 19.) He argues that the same is true for remedies at South Unit. (Doc. 144 at 9.)

### B. Analysis

**\*14** The Court will grant the motion as to unused greeting cards and bookmarks; calendars; circulars, catalogs, and ads; information printed off the ADC website that does not threaten security; non-commercially recorded CDs created during the course of a legal proceeding; and prohibiting inmates from joining pre-pay music clubs. The Court will grant the motion as to blank stationary. Finally, the Court will also dismiss the claim related to tax forms.

As to the first group of items, Defendants provide evidence that a grievance procedure was available, and it appears that Plaintiff did not even attempt to exhaust as to those issues. Plaintiff submits grievance documents for only the stationary and tax-forms issues. A generalized assertion that the grievance procedure was unavailable is not sufficient to excuse a failure to exhaust administrative remedies. See *Sapp v. Kimbrell,* 623 F.3d 813, 823–24 (9th Cir.2010) (although there is an exception to the PLRA exhaustion requirement when prison officials render the administrative remedies procedure effectively unavailable by improperly screening grievances, to fit within this exception, the prisoner must show, *inter alia,* that he attempted to exhaust his remedies—especially that he actually filed a grievance or grievances.).

As to the tax forms, Plaintiff's documents show that on June 8, 2009, he filed a grievance stating that "ADC policy does not permit an inmate to receive tax forms via mail, which does not permit inmates like myself to follow the law by having all the forms to file a proper tax return." (Doc. 52–3, V 14.) The proposed resolution is "the excision of all ADC policies that doe not pass the *Turner* test, including the above." (*Id.*) This was returned unprocessed on the grounds that it was out of time frames, that Plaintiff was asked to provide documentation essential to the grievance, and that "Written Instruction Grievances shall only pertain to complaints that relate to the appropriateness or fairness of Department Written Instructions." (*Id.,* V 15.) The First Amended Complaint alleges that the harm in Count XI is opening of legal mail, seizure of a CD, and return of mail. (Doc. 21 at 15.) Plaintiff never claims—either in the First Amended Complaint or the grievance documents—that he actually needed a tax form that was unavailable to him or that he was, in fact, unable to file a proper tax return. Without specific harm, Plaintiff cannot state a claim for a hypothetical denial of tax forms. The Court will dismiss this claim. See 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915(A)(b)(1); 42 U.S.C. § 1997e.

Finally, as to the denial of blank stationary, the grievance dated June 8, 2009, states that on March 6, 2009, mail staff seized blank stationary as contraband, which adversely affected Plaintiff because he did not have the paper; he claims in the grievance that he previously had no access to grievance forms. (Doc. 52–3, V 17.) It was returned unprocessed for the same reasons given as to the tax-forms grievance. The Court finds that the grievance was not improperly returned as unprocessed, and Plaintiff does not explain why he did not attempt to resubmit the grievance with proof of seizure of the stationary. Therefore, Plaintiff failed to exhaust administrative remedies.

**\*15** The claims in Count XI will be dismissed.

## IX. Count XV

In Count XV, Plaintiff alleged retaliation after he wrote to the Kansas Department of Corrections (KDOC) about the access to the courts it provides to inmates," and the KDOC notified ADC administration of the inquiry and included a copy of Plaintiff's letter. Plaintiff alleged that unknown ADC staff ordered Ortega to "take care" of Plaintiff, even though an unbiased review of the letter in question made it clear that the letter did not violate either state law or ADC policy," and that Ortega initiated disciplinary proceedings by charging Plaintiff with fraud. (Doc. 21 at 19.)

### A. Parties' Contentions

Defendants argue that although Plaintiff claims to have exhausted his retaliation claim against Ortega because Plaintiff appealed his disciplinary citation in case # 10–A02–0089, even if Plaintiff used all appeals available to him in the disciplinary process, this would not have exhausted his retaliation claim. (Doc. 132 at 14, ref. Ex. B at 5.) DO 802.01 § 1.1 provides that inmates may use the grievance process to "address inmate complaints related to any aspect of institutional life or conditions of confinement that directly and personally affects the inmate grievant, including Department Orders, Director's Instructions, Institution and Post Order, Technical Manuals and written instructions, procedures and the actions of staff." (Doc. 132, Ex. A, Attach.2.) Plaintiff could have pursued a grievance under DO 802 complaining that Ortega improperly wrote him up and disciplined him for corresponding with the KDOC. His failure to do so means that he did not exhaust his administrative remedies. (Doc. 132 at 14.)

Plaintiff argues that Defendants have acknowledged that Plaintiff is seeking redress for retaliatory discipline and that DO 802.01 § 1.3.1 prohibited him from using the grievance process to challenge a disciplinary report. (Doc. 144 at 10.) Therefore, Plaintiff exhausted his remedies.

Defendant reply that remedies remained available under DO 802 and that had Plaintiff prevailed in such a grievance, Ortega could have been subject to adverse personnel action. (Doc. 146 at 6.) Because remedies remained available to Plaintiff under DO 802, Plaintiff was required to exhaust under DO 802. (*Id.*)

**B. Analysis**

The Court will deny the motion to dismiss as to the claim in Count XV. Defendants do not dispute that Plaintiff completed the disciplinary grievance procedure and do not meet their burden to demonstrate that Plaintiff was required to exhaust this issue again using another administrative procedure.

DO 802.01 § 1.3 states that the Grievance Procedure "does not serve as a duplicate appeal process or substitute appeal process" for, among other matters, the Inmate Disciplinary Procedures. (Doc. 132, Ex. A, Attach.2.) It does not, however, state that, in order to be properly exhausted, some issues may have to be pursued under more than one administrative remedy procedure. Although Defendants assert that remedies remained available to Plaintiff under DO 802, they cite to nothing in the procedure. Moreover, it is unclear from the record what issues were raised in the disciplinary appeal. If the issue of retaliation was raised, arguably prison officials were afforded an opportunity to address the retaliation issue; this would satisfy the primary purpose of a grievance system: "to notify the prison of a problem." *See Griffin,* 557 F.3d at 1120. Defendants fail to meet their burden to show that Plaintiff did not exhaust his administrative remedies, and the motion will be denied as to Count XV.

**\*16 IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion to Dismiss (Doc. 132).

Defendants' Motion to Dismiss (Doc. 132) is **granted in part and denied in part** as follows:

(a) **granted:**

(i) Count VII—claims for assessments for renewal of diabetic diet and missed special meals are dismissed without prejudice for failure to exhaust administrative remedies, and claims for assessment for replacement ID cards and positive urinalysis are dismissed without prejudice as not ripe;

(ii) Count VIII is **dismissed** without prejudice for failure to exhaust administrative remedies;

(iii) Count X is **dismissed** without prejudice as not ripe;

(iv) Count XI is **dismissed** without prejudice for failure to exhaust administrative remedies, except for the claim for tax forms, which is **dismissed** for failure to state a claim; and

(b) **denied** in all other respects.

(3) The remaining claims are:

(a) Count III;

(b) Count VII for assessment to inmate accounts for photocopies, legal phone calls, legal supplies (paper, pens, etc.), legal mail postage, follow-up visits and prescription renewals for chronic diseases, and GED testing;

(c) Count IX; and

(d) Count XV.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 394879

---

Footnotes

1    Defendants initially sought dismissal of additional claims on the ground of failure to exhaust administrative remedies but withdrew certain arguments upon reviewing Plaintiff's response. (*See e.g.,* Doc. 146 at 2, 3.)

2    As to Defendants' arguments that the Ninth Circuit has rejected the continuing-violation theory, the Court notes that Ngo did not reject the theory but merely refused to apply it in that case. *Ngo v. Woodford,* 539 F.3d 1108, 1109–10 (9th Cir.2008). More recently, the Ninth Circuit has stated that an apparent conflict among cases regarding statutes of limitations is not a conflict but rather different lines of authority that identify different circumstances that lead to different accrual dates for claims. *Pouncil v. Tilton,* 704 F.3d 568, 2012 WL 5871659 (9th Cir. Nov.21, 2012).

3     The documents also say nothing about chronic illnesses but Defendants seem to have withdrawn motion as to this claim.

4     At the time of *Hale*, § 31–254 provided: If the director enters into a contract ... with a private [entity] the compensation shall be prescribed by the [private entity] but shall not be below the minimum wage. *Hale,* 993 F.2 at 1398.

---

**End of Document**                © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 1056416
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Kody WEIDMAN, Plaintiff,
v.
Larry WILCOX, Defendant.

No. 6:12–CV–6524 (MAT).
|
Signed March 17, 2014.

**Attorneys and Law Firms**

Kody Weidman, New Berlin, NY, pro se.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.

**I. Introduction**

*1 *Pro se* plaintiff Kody Weidman ("Weidman" or "Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), instituted this action pursuant to 42 U.S.C. § 1983, alleging that he was denied adequate medical treatment in violation of his rights under the Eighth Amendment. Defendant has moved to dismiss the complaint on the basis that Weidman has failed to exhaust his administrative remedies.

**II. Background**

Plaintiff has alleged the following facts, which the Court accepts as true for purposes of this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). *E. g., Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997) (citations omitted). On September 3, 2012, Plaintiff was bitten on his left cheek by a spider. He reported it and was sent to sick call. However, the head nurse refused to treat him, and as a result, his left cheek "swell[ed] up and start[ed] to pus", and became painful. Dkt # 1, p. 3 of 4. Plaintiff contacted "D.I. Delmani", who in turn contacted "the sgt", who took him to the hospital at Lakeview on September 6, 2012. *Id.* There, Plaintiff was seen by a doctor who gave him "sulfamethox" and applied a heat

pack to his face. The "pus and swelling then went down." *Id.*

Plaintiff did not file a grievance but instead proceeded directly to this Court, filing his complaint on September 14, 2012. Defendants filed a motion to dismiss on March 18, 2013. The complaint was dismissed for failure to prosecute on June 19, 2013, but was reinstated on June 25, 2013. The matter was transferred to the undersigned on February 20, 2014. For the reasons set forth below, the motion to dismiss is granted, and the complaint is dismissed in its entirety with prejudice.

**III. Defendant's Motion to Dismiss**

Defendant asserts that it is clear from the face of Plaintiff's complaint that he has failed to exhaust his administrative remedies by filing a prison grievance, and therefore his complaint warrants dismissal pursuant to Rule 12(b)(6). In response to Defendant's non-exhaustion argument, Plaintiff simply restates the basis for his grievance as his reason for not exhausting his administrative remedies.

**A. Administrative Exhaustion**

The Prison Litigation Reform Act of 1995 (the "PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), requires an inmate to exhaust all available administrative remedies before filing suit in federal court. Specifically, Section 1997e(a) of Title 42 U.S.C. provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has ruled that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong[,]" *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

*2 It is well established that exhaustion requires that "a prisoner must grieve his complaint about prison conditions up through the highest level of administrative review" before filing suit. *Porter v. Goord,* No. 01 Civ. 8996(NRB), 2002 WL 1402000, at *1 (S.D.N.Y. June 28, 2002) (citing *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) ("[G]rievances must now be fully pursued prior to filing a complaint in federal court."); other citation

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 1

omitted)); *see also Booth v. Churner,* 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (noting that inmate, who conceded nonexhuastion below, "did not, however, go beyond the first step, and never sought intermediate or final administrative review after the prison authority denied relief"); *Gibson v. Goord,* 280 F.3d 221, 223 (2d Cir.2002) (noting plaintiff "had not pursued the available remedy of filing a 'level two grievance' "). "Complete exhaustion" is therefore required. *Graham v. Cochran,* No. 96 Civ. 6166(LTS)(RLE), 2002 WL 31132874, at *1, 6 (S.D.N.Y.2002) (noting "action must be dismissed because [plaintiff] unreasonably failed to appeal"); *see also McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) ("The standard is not one of fair notice to the defendants, or of substantial compliance.").

Prisoners in DOCCS custody must complete a three-step inmate grievance procedure, including two levels of appeals, to exhaust their administrative remedies. *See, e.g., Baskerville v. Blot,* 224 F.Supp.2d 723, 729 (S.D.N.Y.2002); N.Y. CORR. LAWW § 139; N .Y. COMP.CODES R. & REGS. tit. 7, § 701.7. The DOCCS grievance procedure is available for any number of complaints, as New York State law "permits inmates to file internal grievances as to virtually any issue affecting their confinement." *Flanagan v. Maly,* No. 99 Civ. 12336(GEL), 2002 WL 122921, at *1 (S.D.N.Y. Jan.29, 2002) (citations omitted).

Although the Second Circuit has not explicitly ruled on the issue of whether exhaustion is jurisdictional, it has held indirectly that it is not. *See Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999) (failure to exhaust is an affirmative defense); *Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir.1999) (exhaustion need not be pled in the complaint); *Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (non-exhaustion may be waived)). Thus, most courts in this Circuit have found that Rule 12(b)(6), rather than Rule 12(b) (1), is the proper vehicle for a defendant to use to seek dismissal of a § 1983 complaint, provided that nonexhaustion is apparent on the face of the complaint. *McCoy,* 255 F.Supp.2d at 249 (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74–75 (2d Cir.1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."); other citation omitted). If, on the other hand, "nonexhaustion is not clear from the face of the complaint, a defendant's motion

to dismiss should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *McCoy,* 255 F.Supp.2d at 251 (citation omitted).

### B. Analysis

**\*3** Plaintiff's complaint, broadly construed, asserts entitlement to damages under 42 U.S.C. § 1983 for negligent medical care and deliberate indifference to a serious medical need. Because Plaintiff has not alleged that he was singled out for such treatment, his action is one brought with respect to prison conditions, and he must exhaust his administrative remedies. *Polanco v. City of N.Y. Dep't of Corr.,* No. 01 Civ. 759(AGS), 2002 WL 272401, at *2 (S.D.N.Y. Feb.26, 2002) (citing *Neal v. Goord,* 267 F.3d at 119–21 (claims of inadequate medical treatment generally relate to prison conditions)). Here, Plaintiff admitted in his complaint that there was a prison grievance procedure available to him, but he did not use it. Dkt # 1, p. 2 of 4. When asked on the form complaint why he did not file a grievance, his response reads in full as follows: "I Kody Weidman when [sic] to sick call about the spider bite on my face and they refuse to attend me." *Id.*

In certain situations, an inmate may be exempted from the exhaustion requirement. If the inmate argues that he is exempt, the court must undertake a three-part inquiry, which entails asking (1) whether administrative remedies were not in fact available; (2) whether the defendants' actions inhibited exhaustion so as to estop them from asserting non-exhaustion as an affirmative defense; or (3) whether "special circumstances" exist (e.g., an inmate reasonably misunderstood the requirements of the grievance procedures). *Hemphill v. City of New York,* 380 F.3d 680, 686 (2d Cir.2004).

Plaintiff has not specifically argued that he is exempt from grieving for any of the reasons recognized in *Hemphill.* He does not claim that the grievance process was "unavailable" to him. Plaintiff does not identify any "special circumstances" that might justify his failure to exhaust his administrative remedies. He does not specifically claim that Defendants took any steps to inhibit him from taking advantage of the grievance process. He simply restates the gravamen of his complaint (i.e., he went to sick call and did not receive treatment for his spider bite)

as his reason for not pursuing a prison grievance through the proper channels. This is plainly insufficient.

In short, because Plaintiff has failed to identify any legally cognizable reason why he could not exhaust his administrative remedies, and because he affirmatively admits that he did not exhaust, the Court must grant Defendants' motion to dismiss his complaint. *See, e.g., Lewis v. City of N.Y.,* No. 12 CV 5850(CM), 2013 WL 3833001, at \*4 (S.D.N.Y. July 23, 2013) (granting defendant's motion to dismiss where plaintiff-inmate failed to offer any excuse for failure to follow through on the grievance he filed; did not claim that grievance process was "unavailable" to him; did not identify any "special circumstances" to justify his failure to exhaust his administrative remedies; and did not specifically claim that prison officials interfered with his ability to use the grievance process).

### C. Whether Dismissal Is With or Without Prejudice

**\*4** When a prisoner fails to exhaust available administrative remedies, and the time permitted for pursuing such remedies has not expired, the complaint is ordinarily dismissed without prejudice, thereby allowing the prisoner to submit a grievance to the particular institution at which the incident in question occurred. *Snider v. Melindez,* 199 F.3d at 111–12; *see also Morales v. Mackalm,* 278 F.3d 126, 128, 131 (2d Cir.2002) (*per curiam* ) (broadly stating in *dictum* that any dismissal for failure to exhaust administrative remedies should be without prejudice), *abrogated* on *other grounds, Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In *Berry v. Kerik,* 366 F.3d 85 (2d Cir.2004), however, the Second Circuit explained that this "broad [ ] *dictum*" in *Morales* "would extend too far if applied to cases where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." 366 F.3d at 88.

Here, because Plaintiff was released from prison during the pendency of this action, administrative remedies are no longer available to him. *Finger v. Superintendent McFinnis,* 99CIV.9870(LTS)(THK), 2004 WL 1367506, \*5 (S.D.N.Y. June 16, 2004) (citing *Morris v. Eversley,*

205 F.Supp.2d 234, 241 n. 4 (S.D.N.Y.2002) (citing *Liner v. Goord,* 115 F.Supp.2d 432, 434 (S.D.N.Y.2000) (concluding that administrative remedies were no longer available to plaintiff who had been released from prison because inmate grievance procedures, on their face, are available only to inmates and visitors, and not to former prisoners)). Since the incident of which Plaintiff complains occurred in early September 2012, and he was not released to parole supervision until March 2013, he had ample opportunity to exhaust his administrative remedies while they were still available to him as a DOCCS prisoner. *See Berry,* 366 F.3d at 88 (former inmate who had been in DOCCS custody had "ample opportunity" to use administrative remedies where he had been incarcerated for several months after the onset of the conditions that gave rise to his complaints and before his release, and then had been incarcerated for periods of nine months and three months on unrelated offenses). As discussed above, Plaintiff has offered no legally cognizable reason for his failure to exhaust, simply stating, in effect, that he failed to file a grievance because he suffered a grievable injury. Hence, the Court finds that Plaintiff's complaint should be dismissed with prejudice. *See id.* (dismissing with prejudice inmate's action for failure to exhaust, where exhaustion was required but administrative remedies had become unavailable after prisoner had ample opportunity to use them, and no special circumstances justified failure to exhaust).

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Dkt # 10) is granted, and Plaintiff's complaint (Dkt # 1) is dismissed in its entirety with prejudice. The Court hereby certifies that any appeal of this order would not be taken in good faith, and therefore it denies leave to appeal in *forma pauperis.* Any further request for in *forma pauperis* status must be made on motion to the United States Court of Appeals for the Second Circuit. The Clerk of the Court is requested to close this case.

**\*5 IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.3d, 2014 WL 1056416

---

  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 4643036
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

SHAWN WOODWARD, Plaintiff,

v.

LYTLE, Correctional Officer, Cape Vincent
Correctional Facility, et al., Defendants.

9:16-CV-1174 (NAM/DEP)
|
Filed 09/27/2018

**Attorneys and Law Firms**

Appearances:

SHAWN WOODWARD, Plaintiff Pro Se, 00-A-6563,
Collins Correctional Facility, P.O. Box 340, Collins, New
York 14034

Attorneys for Defendants: Hon. Barbara D. Underwood,
Attorney General of the State of New York, Helena
Lynch, Esq., Assistant Attorney General, The Capitol,
Albany, New York 12224

**MEMORANDUM-DECISION AND ORDER**

Hon. Norman A. Mordue, Senior U. S. District Judge

**I. INTRODUCTION**

**\*1** Plaintiff *pro se* Shawn Woodward, a New York
State prison inmate, brings this 42 U.S.C. § 1983
action against seven individual Defendants employed
by the New York State Department of Corrections
and Community Supervision ("DOCCS"), alleging civil
rights claims related to his confinement at Cape Vincent
Correctional Facility ("Cape Vincent"). (Dkt. No. 1).
Plaintiff's remaining claims are for First Amendment
retaliation against all Defendants and Eighth Amendment
excessive force against Defendant Dawley. (Dkt. Nos. 30,
36). On February 9, 2018, Defendants filed for summary
judgment, on the basis that Plaintiff's claims were barred
based on his failure to exhaust the available administrative
remedies prior to filing this action. (Dkt. No. 41).
The matter was referred to United States Magistrate
Judge David E. Peebles, who, on August 13, 2018,
issued a Report & Recommendation, recommending that
Defendants' motion for summary judgment be granted

and that the case be dismissed because Plaintiff failed to
exhaust his available administrative remedies. (Dkt. No.
57). Plaintiff then filed timely objections to the Report
& Recommendation, arguing, *inter alia*, that he could
not have exhausted his administrative remedies since they
were "opaque and incapable of use." (Dkt. No. 60, p. 12).

**II. STANDARD OF REVIEW**

This court reviews *de novo* those portions of the
Magistrate Judge's findings and recommendations that
have been properly preserved with a specific objection, as
is the case here. *Petersen v. Astrue*, 2 F. Supp. 3d 223,
228-29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C).

Summary judgment may be granted only if all the
submissions taken together "show that there is no genuine
issue as to any material fact and that the moving party
is entitled to judgment as a matter of law." *In re World
Trade Center Lower Manhattan Disaster Site Litig.*, 758
F.3d 202, 210 (2d Cir. 2014). A fact is material if it "might
affect the outcome of the suit under the governing law."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);
*see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d
Cir. 2005). A fact is genuinely in dispute "if the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party." *Id.* In ruling on a summary judgment
motion, the court "must construe the facts in the light
most favorable to the non-moving party and must resolve
all ambiguities and draw all reasonable inferences against
the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352
F.3d 775, 780 (2d Cir. 2003). Where the plaintiff proceeds
*pro se*, the Court must read his submissions liberally and
interpret them "to raise the strongest arguments that they
suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d
Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790
(2d Cir. 1994)).

**III. DISCUSSION**

**a. Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C.
§ 1997e(a), requires an inmate to exhaust all available
administrative remedies prior to bringing a federal civil
rights action. *See Espinal v. Goord*, 558 F.3d 119, 123–
24 (2d Cir. 2009). To properly exhaust his administrative
remedies, an inmate must complete the administrative
review process in accord with the applicable state

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 1

procedural rules. *Jones v. Bock*, 549 U.S. 199, 218–19 (2007) (citing *Woodford v. Ngo*, 548 US 81, 88 (2006)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90–91. The defendant bears the burden of proving that a plaintiff failed to exhaust available administrative remedies. *See Samuels v. Fischer*, 168 F. Supp. 3d 625, 651 (S.D.N.Y. 2016).

**\*2** The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). 7 N.Y.C.R.R. §§ 701.5(a)(1), (b). The grievance must be filed within 21 days of the alleged occurrence, using an "inmate grievance complaint form (form #2131)," but if this form is not readily available, "a complaint may be submitted on plain paper." *Id.* at § 701.5(a)(1). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* at § 701.5(c)(1). If the grievant wishes to appeal to the Superintendent, "he or she must complete and sign the appeal section on the IGRC response form (form #2131) and submit it to the grievance clerk within seven calendar days after receipt of the IGRC's written response." *Id.* Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* at § 701.5(d)(1). If the grievant wishes to appeal to the CORC, "he or she must complete and sign form #2133 and submit it to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance." *Id.* If the grievance concerns employee harassment, there is an expedited process: the grievance skips the IGRC level and goes to the Superintendent, who has twenty-five days to make a decision, after which the inmate has seven days to appeal to the CORC. *Id.* at § 701.8. During the grievance process, "matters not decided within the time limits may be appealed to the next step." *Id.* at § 701.6(g)(2). Inmates in special housing units have access to Form #2131, and "[t]he IGP supervisor shall monitor and ensure the proper functioning of the grievance procedure in SHU's." *Id.* at § 701.7.

There is also an exception to the mandatory exhaustion requirement, in the event the administrative remedies are "unavailable." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1858 (2016)). An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858. The Supreme

Court has identified three circumstances in which an administrative remedy, while "officially on the books," is not available. *Id.* at 1859. An administrative remedy is unavailable when: (1) "it operates a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams*, 829 F.3d at 123–24 (quoting *Ross*, 136 S. Ct. at 1859–60).

### b. Evidence of Exhaustion & Availability

On or about April 3, 2015, Plaintiff was incarcerated at Cape Vincent Correctional Facility in Cape Vincent, New York. (Dkt. No. 1, p. 3). Plaintiff helped other inmates prepare complaints about corrections staff, and he was allegedly warned by the staff against "writing up staff" and "testifying at hearings" in support of other inmates, and he was allegedly subjected to retaliation for doing so. (*Id.*, pp. 7–12). On or about July 3, 2015, Plaintiff was confined to the Special Housing Unit ("SHU"), after being found guilty of charges of fighting and drug use. (*Id.*, p. 13). Although the determinations were eventually reversed, Plaintiff spent nearly two months in the SHU as a result of the charges. (*Id.*). Plaintiff alleges that, on July 14, 2015, while in the SHU, he submitted a grievance complaining of retaliatory conduct by various Defendants, but that "[l]ater that week when the Inmate Grievance Program Supervisor made her rounds [,] she told me that she was not filing my grievance because she knew some of the officers and did not believe what I was saying." (Dkt. No. 52-2, pp. 1–2). There is no record of this particular grievance being filed. (*See* Dkt. No. 41-3). On July 22, 2015, Plaintiff successfully filed a grievance related to the food served in the SHU. (Dkt. No. 41-4).

On July 27, 2015, Plaintiff wrote a letter to Acting DOCCS Commissioner Anthony Annucci, informing him that Plaintiff had attempted to file a grievance on July 14, 2015 but was thwarted by the IGP Supervisor. (Dkt. No. 52-2, p. 1). Plaintiff wrote that "because of this [,] I sent a handwritten copy to the facility's superintendent since he is the next in the chain of the grievance appeal process." (*Id.*, p. 2). Plaintiff wrote that he spoke with the Superintendent on July 27, 2015, who referred him back to the "grievance department." (*Id.*). Plaintiff continued:

**\*3** Therefore, because step one (1) and two (2) in the grievance level are refusing to file my complaint, I'm sending it to you to either one (1) order the facility's Grievance Program Supervisor to file such or two (2) delegate this matter to Central Office Review Committee (CORC)[.]

(*Id.*). Annucci referred Plaintiff's letter to Karen Bellamy, the DOCCS Director of the IGP, who wrote Plaintiff in response on August 3, 2015. (Dkt. No. 52-3). In relevant part, Bellamy wrote as follows:

Contact with the [Cape Vincent] administration reveals that the IGP Supervisor did not receive or refuse to file a July 15, 2015 complaint from you alleging staff misconduct. Further, she does not recall speaking with you during rounds on July 15, 2015.

You are advised that Directive #4040 makes no provision for an inmate to refer grievances directly to Central Office, and that specific grievance concerns should be directed to the IGP Supervisor for the most expeditious means of resolution.

(*Id.*). On August 27, 2015, Plaintiff wrote again to Annucci, addressing the Bellamy letter. (Dkt. No. 52-4). Plaintiff expressed confusion as to what to do next, writing that:

This is problematic because if a facility's IGP's Supervisor refuses to file an inmate grievance [,] then what can the inmate do? Especially when as in this case the facility's Superintendent also refuses to except [sic] an inmate's grievance for filing?

(*Id.*). Plaintiff asked that his grievance be forwarded "to the proper facility's staff for filing," since by that time he had been transferred to Southport Correctional Facility in Pine City, New York. (*Id.*). By letter dated October 8, 2015, Bellamy responded to Plaintiff, writing in relevant part that: "Please be advised that your IGP issues were addressed in my August 3, 2015 letter to you ... You have not presented any compelling evidence to indicate that your grievances are not being processed in accordance

with Directive #4040." (Dkt. No. 52-5). According to DOCCS, "[n]either Plaintiff's July 27, 2015 letter nor his August 27, 2015 letter was a grievance or an appeal of a grievance." (Dkt. No. 52-1, ¶ 7). There is no record of an appeal related to the alleged July 14, 2015 grievance. (*See* Dkt. No. 41-5).

### c. Analysis

In their motion for summary judgment, Defendants argued that Plaintiff failed to exhaust his administrative remedies and could not show that the administrative remedies were unavailable to him. (Dkt. No. 41-1). In the Report & Recommendation, Magistrate Judge Peebles correctly found that Plaintiff failed to exhaust his administrative remedies, since Plaintiff never actually filed a grievance related to the claims in this action, nor did he appeal any such grievance to the CORC. (Dkt. No. 57). That left one question: "whether the IGP was unavailable to plaintiff such that he may be excused from his failure to fully exhaust the administrative remedies." (*Id.*, p. 18). After careful review of the record, the Court finds that an issue of fact remains as to this question, in accordance with the Second Circuit's decision in *Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016).

In that case, the plaintiff was housed in the SHU at Downstate Correctional Facility, and while there, he allegedly drafted a grievance concerning staff misconduct and then gave it to a correction officer to forward to the grievance office on his behalf. *Williams*, 829 F.3d at 120–21. The plaintiff never received a response to the grievance, he never appealed it, and he was transferred to another facility about two weeks later. *Id.* at 121. He alleged that the correction officer in the SHU never filed the grievance for him. *Id.* The plaintiff filed a civil rights action, but the defendants successfully moved to dismiss, on the basis that the plaintiff failed to exhaust his administrative remedies, citing records that he never filed an appeal of the grievance. *Id.* But the Second Circuit reversed, finding that the administrative remedies were unavailable to the plaintiff under the circumstances, where he had an unfiled and unanswered grievance:

**\*4** However, even if Williams technically could have appealed his grievance, we conclude that the regulatory scheme providing for that appeal is "so opaque" and "so confusing that ... no reasonable prisoner can use [it]."

*Ross*, 136 S.Ct. at 1859 (quoting Tr. of Oral Arg. 23). The regulations simply do not contemplate the situation in which Williams found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance.

*Williams*, 829 F.3d at 124. The Circuit explained that the regulations do not outline any process to appeal an unfiled grievance:

> On their face, the regulations only contemplate appeals of grievances that were actually filed. For example, if the grievance had never been filed, the superintendent would never have received it and the timeline for her to provide a response within 25 days "of receipt of the grievance" would never have been triggered. NYCRR tit. 7, § 701.8(f). In turn, the textual provision allowing a grievant to appeal to the CORC would never have come into effect. *See id.* § 701.8(g) ("If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC.").

*Id.* The Circuit concluded that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id.* at 126. Further, the "obscurity" of the regulations "was compounded by the fact that Williams was transferred to another facility approximately two weeks after giving his grievance to the correction officer," since the regulations also do not provide guidance "on how a transferred inmate can appeal his grievance with the original facility without having received a response." *Id.* The Circuit recommended that, to avoid confusion going forward, "DOCCS revise its grievance procedures to instruct inmates how to appeal grievances that were not properly filed by prison staff, and how to appeal a grievance, to which the inmate never received a response, after being transferred." *Id.* at 126–27.

Likewise, there is evidence in this case that: 1) Plaintiff drafted a grievance while in the SHU on or about July 14, 2015; 2) he gave it the IGP Supervisor for filing; and 3) the grievance was never filed or answered. (Dkt. No. 1; Dkt. No. 52-2). On the other hand, there is evidence that the IGP Supervisor never received or refused to file any such grievance. (Dkt. No. 52-3). It is undisputed that DOCCS has no record of this grievance or any related appeal. Drawing all inferences in the non-moving party's favor, Plaintiff drafted and submitted the grievance, but

it went unfiled and unanswered. Under these particular circumstances, "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Williams*, 829 F.3d at 126. Moreover, Plaintiff was also transferred after attempting to file the grievance, further compounding the problem. *Id.* Plaintiff's understandable confusion about the process is evident in his letters dated July 27, 2015 and August 27, 2015 to Acting Commissioner Annucci. (Dkt. Nos. 52-2, 52-4). And in response, DOCCS made no attempt to explain that Plaintiff had to appeal the non-response to his alleged unfiled grievance to the CORC, the position taken by Defendants in this case.[1] In fact, Plaintiff was advised that "Directive #4040 makes no provision for an inmate to refer grievances directly to Central Office, and that specific grievance concerns should be directed to the IGP Supervisor for the most expeditious means of resolution." (Dkt. No. 53-3). Plaintiff correctly identifies this confounding situation in his objections to the Report & Recommendation. (Dkt. No. 60, p. 16).

**\*5** In sum, viewing the evidence in the light most favorable to Plaintiff, the Court finds that an issue of fact exists as to the availability of the grievance process, which precludes summary judgment.[2] *See Williams*, 829 F.3d at 126–27; *see also Medina v. Napoli*, 725 F. App'x 51, 54 (2d Cir. 2018) ("The record establishes that Medina's allegations, supported by witness testimony, about defendants' actions to prevent the filing of Medina's grievances concerning the June 2007 incident are sufficient, when viewed in the light most favorable to Medina, to raise a genuine issue of material fact as to whether the grievance process was 'available' to Medina under the *Ross* and *Williams* exhaustion analysis."); *Jackson v. Downstate Correctional Facility*, No. 16 Civ. 267, 2018 WL 3650136, at *9, 2018 U.S. Dist. LEXIS 128980, at *18 (S.D.N.Y. July 31, 2018) (denying summary judgment motion based on failure to exhaust administrative remedies where evidence showed that the plaintiff "submitted a grievance, but that grievance was never filed," and the appeal procedures were "prohibitively opaque") (citing *Williams*); *Hurst v. Mollnow*, No. 16 Civ. 1062, 2018 WL 4178226, at *10, 2018 U.S. Dist. LEXIS 122624, at *26 (N.D.N.Y. July 20, 2018) ("In light of *Williams*, the Court finds material issues of fact as to the availability of the grievance process and whether Plaintiff attempted to exhaust his administrative remedies, precluding summary judgment."), *report and recommendation adopted*, No. 16

Civ. 1062, 2018 WL 4153926, 2018 U.S. Dist. LEXIS 147670 (N.D.N.Y. Aug. 30, 2018); *Fann v. Graham*, No. 15 Civ. 1339, 2018 WL 1399331, at *6, 2018 U.S. Dist. LEXIS 6717, at *17 (N.D.N.Y. Jan. 11, 2018) ("Viewing the facts in the light most favorable to plaintiff, the record suggests that plaintiff's grievances were submitted, but were unfiled and unanswered, creating an issue of fact as to whether the grievance process was available and whether plaintiff attempted to exhaust his administrative remedies ...."), *report and recommendation adopted*, No. 15 Civ. 1339, 2018 WL 1399340, 2018 U.S. Dist. LEXIS 43887 (N.D.N.Y. Mar. 19, 2018); *Reid v. Marzano*, No. 15 Civ. 761, 2017 WL 1040420, at *3, 2017 U.S. Dist. LEXIS 38547, at *10 (N.D.N.Y. Mar. 17, 2017) (denying summary judgment motion based on exhaustion argument, noting that "it is DOCCS' borderline incomprehensible regulation governing this situation that is to blame").

## IV. CONCLUSION

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Peebles's Report & Recommendation (Dkt. No. 57) is **REJECTED**; and it is further

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. No. 41) is **DENIED without prejudice** to renew should the Defendants request an exhaustion hearing pursuant to *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011); and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

**\*6** Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

2018 WL 4643036

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

**All Citations**

Slip Copy, 2018 WL 4643036

Footnotes

1    The obscurity of this Kafkaesque suggested process is further demonstrated by the fact that the regulations spell out that any appeal to the CORC requires Form #2133, while inmates in the SHU only have access to Form #2131. *Compare* N.Y.C.R.R. §§ 701.5(d)(1), 701.7(a); *see also Davis v. State of New York*, 311 F. App'x 397, 399 n.2 (2d Cir. 2009) (explaining that Form #2133 is the form which has the Superintendent's grievance decision printed on the top half of a single sheet and on the bottom half contains the form an inmate is required to file to appeal the Superintendent's decision to the CORC).

2    The fact that Plaintiff successfully filed one grievance while in the SHU related to the food served there does not demonstrate that he could have filed one about employee misconduct or that he could have appealed an unfiled grievance to the CORC, so as to eliminate the issue of fact as to the availability of administrative remedies.

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1977972
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jason S. PLANCK, Plaintiff,

v.

SCHENECTADY COUNTY, et al., Defendants.

No. 1:12–CV–0336(GTS/DRH).
|
June 1, 2012.

**Attorneys and Law Firms**

Jason S. Planck, of Counsel, Schenectady, NY, pro se.

Goldberg Segalla LLP, Jonathan M. Bernstein, Esq., William J. Greagan, Esq., of Counsel, Albany, NY, for Defendants.

*MEMORANDUM–DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

**\*1** Currently pending before the Court, in this *pro se* civil rights action filed by Jason S. Planck ("Plaintiff") against Schenectady County and fifteen of its legislators ("Defendants"), are the following four motions: (1) Plaintiff's motion for reconsideration of the Court's Decision and Order of February 29, 2012, denying his motion for a temporary restraining order (Dkt. No. 10); (2) Plaintiff's motion for a report from the Court regarding the status of his motion for reconsideration (Dkt. No. 30); (3) Plaintiff's motion for a preliminary injunction (Dkt. No. 4); and (4) Defendants' cross-motion to dismiss Plaintiffs' Complaint (Dkt. No. 17). For the reasons set forth below, Plaintiffs' three motions are denied; and Defendants' cross-motion is granted.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Claims**

Generally, when construed with the utmost of special liberality, Plaintiff's Complaint asserts three civil rights claims against Defendants-one claim asserting a violation of Rehabilitation Act of 1973, and two claims asserting violations of the Americans with Disabilities Act-

arising from Schenectady County's ("the County") approval of a project labor agreement (to construct a new nursing home) that permits the hiring of only unionized construction workers, thus discriminating against qualified nonunionized construction workers with disabilities. (*See generally* Dkt. No. 1.) Because this Decision and Order is intended primarily for the review of the parties, and because Defendants (in their memorandum of law) accurately describe the claims and factual allegations asserted in Plaintiff's Complaint, the Court will not describe those claims and factual allegations in detail in this Decision and Order. Rather, the Court will refer the reader to pages 1 through 3 of Defendants' memorandum of law and paragraphs 2 through 4, and 7 through 44, of Plaintiff's Complaint. (Dkt. No. 17, Attach. 11, at 6–8 [attaching pages "1" through "3" of Defs.' Memo. of Law]; Dkt. No. 1, at ¶¶ 2–4, 7–44.)

**B. Briefing on the Parties' Motions**

Because the parties have demonstrated in their memoranda of law an adequate understanding of the legal arguments asserted in each other's motions, the Court need not, and does not, describe in detail those arguments in this Decision and Order. Rather, the Court will simply make two points.

First, generally, in their cross-motion to dismiss, Defendants assert the following three arguments: (1) Plaintiff's Complaint should be dismissed under Fed.R.Civ.P. 12(b)(1), because (a) the Court lacks subject-matter jurisdiction over Plaintiff's challenge to the County's project labor agreement (which must be presented by Plaintiff in an Article 78 proceeding in state court), and (b) Plaintiff, who is not a qualified construction worker but merely a taxpayer, lacks standing to challenge the County's approval of the project labor agreement; (2) in the alternative, Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), because Plaintiff has failed to allege facts plausibly suggesting the elements of a claim under either Rehabilitation Act of 1973 or the Americans with Disabilities Act (particularly the element requiring that he be a *qualified* individual with a disability); and (3) in the alternative, Plaintiff's claims against the legislative Defendants should be dismissed for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), because, based on Plaintiff's own factual allegations, those claims are either duplicative

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 1

Planck v. Schenectady County, Not Reported in F.Supp.2d (2012)
Case 9:17-cv-01115-GLS-ML Document 26 Filed 10/03/18 Page 57 of 63
2012 WL 1977972

of Plaintiff's claims against the County or barred as a matter of law by the doctrine of legislative immunity. (Dkt. No. 17, Attach. 11, at 8–22 [attaching pages "3" through "17" of Defs.' Memo. of Law].)

**\*2** Second, in this District, when a party files a dispositive motion (such as a motion for a preliminary injunction), [1] that party is not entitled to file a surreply. N.D.N.Y. L.R. 7.1(b)(1). Furthermore, when a party files a nondispositive motion (such as a motion for reconsideration), that party is not even entitled to file a reply, without prior leave of the Court. N.D.N.Y. L.R. 7.1(b)(2). Finally, when a party files a cross-motion (such as a cross-motion to dismiss), that party is not entitled to file a reply on its cross-motion without prior leave of the Court. N.D.N.Y. L.R. 7.1(c). Even if it were permitted to file a reply, that reply may address only the party's own cross-motion, and not the opponent's original motion; otherwise, the "reply" would, in part, constitute a surreply. [2] Here, the parties have violated each of these rules, in addition to violating several filing deadlines. (Dkt. Nos. 23, 25, 31, 32; *see also* Text Notices filed March 9, 2012, and Apr. 2, 2012.) [3] As a result, the submissions contained in Docket Numbers 23, 25, 31 and 32 will not be considered by the Court. The Court would add only that, even if it were to consider the submissions, that consideration would not change the outcome of this Decision and Order.

## II. ANALYSIS

### A. Motion for Reconsideration
Generally, there are only three grounds upon which a district court may justifiably reconsider its previous ruling: (1) an intervening change in controlling law, (2) new evidence, or (3) a demonstrated need to correct a clear error of law or to prevent manifest injustice. *U.S. v. Sanchez,* 35 F.3d 673, 677 (2d Cir.1994), *cert. denied,* 514, U.S. 1038 (1995).

Here, after carefully considering the matter, Plaintiff's motion for reconsideration is denied for each of the numerous reasons offered by Defendants in their memorandum of law: Plaintiff has not satisfied the above-described standard. (Dkt. No. 17, Attach. 11, at 15–18 [attaching pages "10" through "13" of Defs.' Memo. of Law].)

The Court would add two alternative grounds for the denial of Plaintiff's motion. First, Plaintiff's motion is unsupported by a memorandum of law that is separate and apart from an affidavit, in violation of Local Rule 7.1. The Court notes that an affidavit may not contain legal argument. N.D.N.Y. L.R. 7.1(a)(2). Second, Plaintiff's motion is moot in that it seeks an order restraining Defendants from acting between a discrete time period (i.e., the time of the Court's decision on Plaintiff's motion a temporary restraining order and the time of the Court's decision on Plaintiff's motion for a preliminary injunction), which has, as of the date of this Decision and Order, already expired.

Finally, the Court notes that Plaintiff's motion for reconsideration also requested oral argument, and/ or an expedited decision, on Plaintiff's motion for reconsideration. That request is denied as unsupported by a showing of cause and/or moot.

### B. Motion for a Status Report from the Court
**\*3** After carefully considering the matter, Plaintiff's motion for a status report from the Court is denied as unsupported by a showing of cause and/or moot.

### C. Motion for a Preliminary Injunction
Generally, the issuance of a preliminary injunction pursuant to Fed.R.Civ.P. 65 depends on the movant's demonstration of (1) irreparable harm and (2) either a likelihood of success on the merits, or a sufficiently serious question as to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 33 (2d Cir.1995).

Here, after carefully considering the matter, Plaintiff's motion for a preliminary injunction is denied for each of the numerous reasons offered by Defendants in their memorandum of law: Plaintiff has not satisfied the above-described standard: on the current record, Plaintiff has not established either irreparable harm or a likelihood of success on the merits. (Dkt. No. 17, Attach. 11, at 18–22 [attaching pages "13" through "17" of Defs.' Memo. of Law] .) Of particular concern to the Court is this latter deficiency (i.e., Plaintiff's failure to show a likelihood of success on the merits), which is exacerbated by the various substantive pleading defects in his Complaint. The Court would add only that, even setting aside these

pleading defects, following the Court's denial of Plaintiff's motion for a temporary restraining order, Plaintiff did not supplement the record with the sufficient evidence to warrant a contrary finding. (*Compare* Dkt. No. 1 *and* Dkt. No. 4 *with* Dkt. No. 10 *and* Dkt. No. 22.)

#### D. Defendants' Cross–Motion to Dismiss

#### 1. Legal Standard Governing Dismissal for Lack of Subject–Matter Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(1)

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.,* 201 F.3d 110, 113 (2d Cir.2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova,* 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova,* 201 F.3d at 113 (citing *Malik v. Meissner,* 82 F.3d 560, 562 [2d Cir.1996] ). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005) (citing *Makarova,* 201 F .3d at 113).

The Court notes that challenges to a litigant's standing are properly raised on a motion for lack of subject-matter jurisdiction. *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 88–89 & n. 6 (2d Cir.2006) ("Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1), ... the proper procedural route is a motion under Rule 12(b)(1)."); *A.C. v. Mattingly,* 05–CV–2986, 2007 WL 894268, at *3 (S.D.N.Y. March 20, 2007) ("The argument of lack of standing is properly raised under Rule 12(b)(1).").

#### 2. Legal Standard Governing Dismissal for Failure to State a Claim Upon Which Relief Can Be Granted, Pursuant to Fed.R.Civ.P. 12(b)(6)

**\*4** It has long been understood that a dismissal for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), may be based on either or both of two grounds: (1) a challenge to

the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga County,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review) [citations omitted].

With regard to the first ground, Fed.R.Civ.P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Id.* at 212, n. 18 [citations omitted]. [4]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id.* at 212, n. 20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id.* at 212, n. 21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id.* at 213, n. 22 [citations omitted]; *see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949–52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation [s]." *Id .* at 1965 [citations omitted]. More specifically, the "[f]actual

allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [citations omitted].[5]

**\*5** As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[6] It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific* facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007) [citation omitted; emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[7]

In reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. This standard is applied with even greater force where the plaintiff alleges civil rights violations and/or where the complaint is submitted *pro se.* However, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed),[8] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[9] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[10] Stated more plainly, when a

plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[11] Moreover, in the Second Circuit, a *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint-to the extent those papers are consistent with the allegations in the complaint.[12]

### 3. Analysis

**\*6** After carefully considering the matter, and applying the above-described legal standard, Plaintiff's motion for a preliminary injunction is denied for each of the three alternative reasons offered by Defendants in their memorandum of law. *See, supra,* Part I.B. of this Decision and Order (summarizing those reasons).

The Court would add only two points. First, although Plaintiff attaches 97 pages of exhibits in his opposition to Defendants' motion to dismiss for failure to state a claim, and a 23–page memorandum of law, the Court either (1) does not construe the allegations in those documents as consistent with the allegations in Plaintiff's Complaint or (2) finds the allegations in those documents to be insufficient to rescue the pleading defects contained in Plaintiff's claims. Second, although Plaintiff appears to now largely hinge his claims on *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581 (1999), and/or Fed.R.Civ.P. 23, the Court finds that reliance to be misplaced. (Dkt. No. 22, Attach. 1, at 4–8 .)

#### 4. Whether Dismissal Should Be With or Without Prejudice

Generally, when a district court dismisses a *pro se* action *sua sponte,* the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend. [13]

Moreover, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted). [14] This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103; *Brown,* 1997 WL 599355 at * 1.

Here, the Court finds that the pleading deficiency in Plaintiff's claims are substantive and not merely formal. As an initial matter, lack of subject-matter jurisdiction is generally viewed as a substantive defect. [15] Even if the Court did possess subject-matter jurisdiction over Plaintiff's claims, the pleading defects in those detailed claims still appear substantive. For example, it does not appear to the Court that granting Plaintiff leave to amend his claims would likely be productive. Setting aside the fact that he has failed to correct those defects despite having had months in which to do so, the fact remains that he appears to insist on asserting nonactionable claims, rendering any amendment futile. (*See generally* Dkt. No. 22, Attach. 1.) As a result, the Court declines to afford Plaintiff an opportunity to amend his Complaint prior to dismissal.

However, because Defendants argued persuasively that Plaintiff should have presented his challenge to the County's project labor agreement in an Article 78 proceeding in state court, the Court dismisses Plaintiff's claims against the County without prejudice to refiling in state court within thirty (30) days of this Decision and Order. [16]

**\*7 ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion for reconsideration of the Court's Decision and Order of February 29, 2012, denying his motion for a temporary restraining order (Dkt. No. 10) is ***DENIED;*** and it is further

**ORDERED** that Plaintiff's motion for a report from the Court regarding the status of his motion for reconsideration (Dkt. No. 30) is ***DENIED;*** and it is further

**ORDERED** that Plaintiff's motion for a preliminary injunction (Dkt. No. 4) is ***DENIED;*** and it is further

**ORDERED** that Defendants' cross-motion to dismiss Plaintiffs' Complaint (Dkt. No. 17) is ***GRANTED;*** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is ***DISMISSED*** **with prejudice EXCEPT** for his claims against Schenectady County, which are ***DISMISSED*** **without prejudice** to refiling in state court within **THIRTY (30) DAYS** of this Decision and Order.

*The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a) (3), that any appeal taken from this Decision and Order would not be taken in good faith.*

### All Citations

Not Reported in F.Supp.2d, 2012 WL 1977972

Footnotes

1    *See Odom v. Senkowski,* 96–CV–0554, 1997 WL 458450, at *1 (N . D.N.Y. Aug. 7, 1997) (Pooler, D.J.) ("Because Odom's request for a preliminary injunction is a dispositive motion, the magistrate judge's recommendations require de novo review.").

2    *See Carlwood Dev. Inc. v. U.S.,* 10–CV–1773, 2011 WL 69374, at *1 (D.Nev. Jan. 10, 2011) (denying petitioner's motion to strike government's improper "cross-motion"—which did not "address[ ] any matters even remotely indicative of a motion for summary judgment" but rather merely responded to the matters raised by the petitioners in their opening brief-because "rather than striking any portion of the ['cross-motion'] itself, the Court will merely construe [it] as only a response

to the [petitioner's] opening brief, and not a cross-motion," and strike the government's unauthorized reply on its improper cross-motion as "nothing more than a disingenuous attempt to get the last word").

3    The Court notes that, on February 28, 2012, Plaintiff receive a courtesy copy of the Local Rules of Practice for this Court. (*See* Docket Entry dated Feb. 28, 2012; Dkt. No. 9.)

4    *See also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ( "Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F .2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

5    *See also Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) ( "[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ).

6    *See, e.g., Jacobs v. Mostow,* 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.,* 521 F.3d 202, 215–16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

7    For example, in *Erickson,* the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatitis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care. *Erickson,* 127 S.Ct. at 2199–2200. Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatitis C medication (a requirement that had been imposed by the district court). This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief. Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees,* 01–CV–0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord,* 02–CV–1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01–CV–6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99–CV–3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000). The important thing is that, in *Erickson,* even the *pro se* plaintiff was required to allege some sort of fact.

8    *Sealed Plaintif v. Sealed Defendant # 1,* No. 06–1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008); *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983).

9    *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

10    *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted], *accord, Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983); *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

11    *See* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L–7 Designs, Inc. v. Old Navy, LLC,* No. 10–573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed.R.Civ.P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take

2012 WL 1977972

judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir.2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint.... However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

12    See *Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 170 n. 1 (2d Cir.1998) (per curiam) ("[W]e deem Drake's complaint to include the facts contained in his memorandum of law filed in response to Delta's 1996 motion to dismiss."); *Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) ( "In his affidavit submitted in opposition to defendants' motion to dismiss, Gill asserts that Mooney's actions amounted to deliberate and willful indifference. Liberally construed under *pro se* pleading standards, Gill's allegations against Mooney involve more than ordinary lack of due care for the prisoner's interests or safety, ... and therefore state a colorable claim under the Eighth and Fourteenth Amendments.") (internal quotation marks and citation omitted); *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.) (Sharpe, M.J.) ("[I]n cases where *a pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they "are consistent with the allegations in the complaint.") (collecting district court cases), *vacated on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004) (Hurd, J.).

13    *Shuler v. Brown,* 07–CV–0937, 2009 WL 790973, at *5 & n. 25 (N.D.N.Y. March 23, 2009) (McAvoy, J., adopting Report–Recommendation by Lowe, M.J.) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint."), *accord, Smith v. Fischer,* 07–CV–1264, 2009 WL 632890, at *5 & n. 20 (N.D.N.Y. March 9, 2009) (Hurd, J., adopting Report–Recommendation by Lowe, M.J.); *Abascal v. Hilton,* 04–CV–1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 130 2008) (Kahn, J., adopting, on de novo review, Report–Recommendation by Lowe, M.J.); *see also Yang v. New York City Trans. Auth.,* 01–CV–3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once); *cf. Foman v. Davis,* 371 U.S. 178, 182 (1962) (denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading).

14    *Accord, Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health– Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ( "[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

15    *See U.S. ex rel. Phipps v. Comprehensive Comty. Dev. Corp.,* 152 F.Supp.2d 443, 455 (S.D.N.Y.2001) ("[I]t is not appropriate to grant Phipps's request [for leave to amend the Complaint] because the Court has determined that it does not have subject matter jurisdiction over this action."); *Chan v. Reno,* 916 F.Supp. 1289, 1302 (S.D.N.Y.1996) ("An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis. As will be discussed herein, [the proposed amended complaint] ... presents a non-justiciable claim and fails to present this Court with subject matter jurisdiction. Therefore, because [the proposed amended complaint] would be subject to a successful motion to dismiss ..., amendment would be futile.").

16    The Court notes that, in addition, it expresses no opinion as to the merits of any claim, arising in the future, that Plaintiff may or may not bring pursuant to *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581 (1999).

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---